667 A.2d 642

Viola M. STEVENS

v.

RITE–AID CORPORATION et al.

No. 29, Sept. Term, 1995.

Court of Appeals of Maryland.

Nov. 24, 1995.

---

556

Argued by Philip Sturman (Anne E. Hoke–Witherspoon, Ingerman & Horwitz, on brief), Baltimore, for Petitioner.

Argued by Michael S. Levin (Debra E. Tow, Dirska & Levin, on brief), Columbia, for Respondent.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, BELL and RAKER, JJ.

KARWACKI, Judge.

We are called upon in this case to analyze Maryland Code (1991), § 9–736 of the Labor and Employment Article,[1] the "reopening" provisions of the Workers' Compensation Act. Under that section, an injured claimant who has received an award of workers' compensation is entitled to request additional compensation if the modification of the award "is applied for within 5 years after the last compensation payment." We issued our writ of certiorari to determine whether an award of a claimant's attorney's fees and costs by the Workers' Compensation Commission (hereinafter "WCC") against his or her employer as a sanction for the employer's bringing frivolous proceedings constitutes compensation within the meaning of the above quoted provision of § 9–736. We shall hold that it does not.

## I.

Viola M. Stevens, the claimant, worked in the stock room at a Rite–Aid pharmacy. On March 12, 1981, a box came down a ramp in the stock room, and when Ms. Stevens attempted to stop it, she accidentally injured her neck, back and left shoulder. Those injuries, their extent, the necessary treat-

---

1. Hereinafter all statutory references are to Maryland Code (1991), Labor and Employment Article, unless otherwise indicated.

ment therefor, and the amount of workers' compensation for them, have all been subjects of the ensuing litigation. We set forth a chronology of that litigation:

**March 12, 1981** Ms. Stevens was injured on the job at Rite–Aid.

**April 9, 1981** The WCC ordered Rite–Aid and its insurer (hereinafter referred to collectively as "Rite–Aid") to pay temporary total disability payments of $74.00 per week beginning on March 15, 1981.[2]

**February 4, 1982** The WCC ruled that Ms. Stevens was temporarily totally disabled from March 13, 1981 to April 15, 1981, and again from September 14, 1981, to December 12, 1981.

**May 13, 1982** Rite–Aid's motion for rehearing was granted, but the Commission reaffirmed its previous order.

**September 27, 1983** The WCC denied temporary total compensation to Ms. Stevens for various dates, but found that Ms. Stevens had sustained a permanent partial disability under "other cases," amounting to 10% industrial loss of use of her body as a result of the injury to her neck and left shoulder on March 12, 1981; accordingly, the WCC ordered permanent partial compensation in the amount of $74.00 per week for a period of 50 weeks beginning December 13, 1981.

**August 29, 1985** Upon Ms. Stevens' request, and after a hearing, the WCC determined that her condition had worsened, and her disability, which previously had been a loss of use of her body of 10%, had increased to 16% loss of use. The WCC ordered the equivalent of 30 additional

---

**2.** The award of temporary total disability is indefinite in time, in that the award continues until maximum medical improvement is reached or the disability becomes permanent. § 9–621(b). *See also* Richard P. Gilbert & Robert L. Humphreys, Jr., *Maryland Workers' Compensation Handbook* 205 (2d ed. 1993).

weeks of compensation. Rite–Aid sought judicial review of this order ["Appeal # 1"].

**December 9, 1986** A jury trial of Appeal # 1 was held in the Circuit Court for Baltimore City, and consistent with the jury's findings, a new order was entered which determined that Ms. Stevens had sustained a 13% loss of use of her body and reduced the supplemental award to 15 additional weeks of compensation. The net result of Appeal # 1 was a reduction in the amount of compensation by $1,110.[3]

**November 17, 1987** Another WCC hearing was held[4] to determine if Ms. Stevens' need for a myelogram[5] was causally related to her injury; to determine if Rite–Aid could deduct the $1,110 overpayment from the payment of medical expenses;[6] and to determine if attorney's fees should be awarded against Rite–Aid for a frivolous proceeding. The Commission found for Ms. Stevens on all three issues, and, pertinent to this appeal stated, "the ... employer and insurer are hereby assessed and shall pay to claimant's counsel ... an attorney fee in the amount of $150.00 and shall pay $125.00 costs unto this Commission,

---

**3.** The WCC had awarded 30 additional weeks of compensation at $74 per week yielding a total additional compensation of $2,220. By reducing the duration of the additional compensation to 15 weeks, Rite–Aid was only obligated to pay $1,110. Because a WCC award is not stayed by an appeal, Ms. Stevens had already received the full $2,220. *See* § 9–741.

**4.** The hearing was held on October 5, 1987. November 17, 1987, is the date the WCC's Order was signed.

**5.** A myelogram is "an x-ray of the spinal cord, taken after the injection of a substance that will show contrast on the developed photograph." *Webster's New World Dictionary* (3d college ed. 1988).

**6.** *See* note 3.

pursuant to Section 57 of Article 101." [7] ["Attorney's Fees Award # 1"].

**December 4, 1987** Rite–Aid sought judicial review of this decision in the Circuit Court for Baltimore City ["Appeal # 2"].

**May 25, 1988** The WCC ordered Rite–Aid to pay for a cervical fusion for Ms. Stevens and to reimburse claimant's counsel "for cost to obtain medical records" ["Attorney's Fees Award # 2"].

**June 13, 1988** Rite–Aid sought judicial review of the May 25, 1988 order ["Appeal # 3"]. During the pendency of this appeal Rite–Aid refused to pay for the cervical fusion surgery.

**October 4, 1988** The WCC found that Rite–Aid's refusal to pay for the cervical fusion was unreasonable and ordered Rite–Aid to pay for the surgery, plus a $350 fee to claimant's attorney ["Attorney's Fees Award # 3"].

**October 13, 1988** Rite–Aid voluntarily dismissed Appeal # 2, and filed an appeal from the October 4, 1988 order ["Appeal # 4"].

**December 6, 1988** Ms. Stevens underwent the cervical fusion surgery. Rite–Aid did not pay for the procedure.

**February 7, 1989** Appeal # 3 was tried in the Circuit Court for Baltimore City. The WCC's order was affirmed, and Rite–Aid ordered to pay for the cervical fusion and the attorney's fees awarded on May 25, 1988.

**March 6, 1991** Rite–Aid voluntarily dismissed Appeal # 4.

**October 18, 1991** Ms. Stevens filed issues with the WCC seeking additional compensation.

**July 12, 1993** Rite–Aid pleaded the affirmative defense of limitations. The WCC found that Ms. Stevens' claim was not time barred.

---

7. As will be discussed, *infra,* § 57 is the forerunner of current §§ 9–731 and 9–734.

**July 30, 1993** Rite–Aid's appeal of the July 12, 1993 ruling ["Appeal # 5"] was heard by the Circuit Court for Baltimore City which reversed the WCC and found the claim to be barred by the statute of limitations.

**December 30, 1994** The Court of Special Appeals affirmed that judgment.

When Ms. Stevens sought to reopen her case before the WCC and to obtain additional workers' compensation on October 18, 1991, approximately six years had passed since she had last received payments of either temporary total or permanent partial disability benefits. Thus, unless the awards of attorney's fees by the WCC on November 17, 1987, and on October 4, 1988, or the award of costs on November 17, 1987, and on May 25, 1988, constitute "compensation" as described in § 9–736, her claim for additional compensation benefits was untimely since it was not "applied for within 5 years after the last compensation payment" as required by § 9–736.

## II.

The WCC's orders of November 17, 1987, and October 4, 1988, were both expressly ordered under the provisions of Md.Code (1957, 1985 Repl.Vol.), Art. 101, § 57, which provided:

**§ 57.   Costs; attorney's fees.**   If the Commission or the court before which any proceedings for compensation or concerning an award of compensation have been brought, under this article, determines that such proceedings have not been so brought upon reasonable ground, it shall assess the whole cost of the proceedings upon the party who has so brought them, including a reasonable attorney's fee.   No person shall charge or collect any compensation for legal services in connection with any claims arising under this article, or for services or treatment rendered or supplies furnished pursuant to § 37 of this article, unless the same be approved by the Commission.   When so approved, such fee or claims shall become a lien upon the compensation awarded, but shall be paid therefrom only in the manner

fixed by the Commission. Upon application of any party in interest, the Commission shall have full power to hear and determine any and all questions which may arise concerning legal services rendered in connection with any claim under this article and may order any attorney or other person receiving the same, to refund to the person paying the same, any portion of any charge for legal services which the Commission may, in its discretion, deem excessive. Orders of the Commission regulating payments and refunds for legal services may be enforced in the courts of this State, or may be appealed from in like manner as awards for compensation under this article.

In 1991, however, pursuant to the general code revision process, Art. 101, § 57 was split into two separate provisions, §§ 9–731 and 9–734 of the new Labor and Employment Article of the Maryland Code.[8] The first sentence of Art. 101, § 57 became § 9–734, which provides:

### § 9–734. Frivolous proceedings.

If the Commission finds that a person has brought a proceeding under this title without any reasonable ground, the Commission shall assess against the person the whole cost of the proceeding, including reasonable attorney's fees.

The second and third sentences of the former § 57 are now codified at § 9–731:

### § 9–731. Fees for legal services, funeral expenses, and medical services, supplies, or treatment.

(a) *In general.—*

(1) Unless approved by the Commission, a person may not charge or collect a fee for:

(i) legal services in connection with a claim under this title;

(ii) medical services, supplies, or treatment provided under Subtitle 6, Part IX of this title; or

---

8. Acts of 1991, ch. 8, § 2.

(iii) funeral expenses under Subtitle 6, Part XIII of this title.

(2) When the Commission approves a fee, the fee is a lien on the compensation awarded.

(3) Notwithstanding paragraph (2) of this subsection, a fee shall be paid from an award of compensation only in the manner set by the Commission.

The Code Revisor's notes make clear that with one minor exception, the split of Art. 101, § 57 was not intended to have substantive effect on either of the resulting sections, §§ 9–731 or 9–734.[9]

Although both the November 17, 1987, and the October 4, 1988, orders were expressly entered under the authority of § 57, there was no express indication by the WCC of which sentence was intended to authorize the awards. The May 25, 1988, order contained no express statement that the award was predicated on § 57 or any other statutory provision. Therefore, we must infer from the circumstances, under which current statute the Commissioner would have intended to make the award.

The November 17, 1987, award was made specifically in response to Ms. Stevens' request for attorney's fees and costs as a result of the frivolous proceeding. The award stated: "the ... employer and insurer are hereby assessed and shall pay to claimant's counsel ... an attorney fee in the amount of $150.00 and shall pay $125.00 costs unto this Commission, pursuant to Section 57 of Article 101."

The May 25, 1988, order was not explicit in its statutory basis, but the inference is clear from the transcript of the proceedings that the Commissioner intended to punish the employer and insurer for a proceeding brought in bad faith. The award was made solely to claimant's counsel as a result of his being forced unnecessarily to obtain medical records.

---

9. Section 9–734 does not, as former Art. 101, § 57 did, authorize a court to assess costs and attorney's fees.

The October 4, 1988, order awarded $350 directly to claimant's counsel specifically as attorney's fees due to Rite Aid's refusal to pay for Ms. Stevens' cervical fusion surgery despite the WCC's previous order that they should do so.

It is clear from our review of the transcripts and orders of the WCC that the attorney's fees and costs were imposed as sanctions against the employer and insurer under what is now § 9–734 and not as fees for services rendered to Ms. Stevens.[10] Having determined that the attorney's fees and costs awarded in this case were awarded exclusively as punishment for Rite–Aid's malfeasance, and in accordance with § 9–734, we must next determine if such an award is compensation within the meaning of § 9–736, the "reopening" provision.

### III.

Our inquiry begins with an examination of the "reopening" provision of the Workers' Compensation Act, § 9–736. That statute provides:

**§ 9–736  Readjustment; continuing powers and jurisdiction; modification.**

. . . . .

*(b) Continuing powers and jurisdiction; modification.—*

(1) The Commission has continuing powers and jurisdiction over each claim under this title.

---

10. Section 9–731 is the general attorney's fees provision and it is intended to:

  "... prohibit the dissipation of an employee's compensation through the payment of excessive legal fees *out of the award* by giving the Commission the power to regulate when and how much remuneration an attorney who represents a claimant in [workers'] compensation litigation is to receive from the employee for legal services rendered to him."

*Chanticleer Skyline Room, Inc. v. Greer,* 271 Md. 693, 699–700, 319 A.2d 802, 805 (1974) (Emphasis added).

(2) Subject to paragraph (3) of this subsection, the Commission may modify any finding or order as the Commission considers justified.

(3) Except as provided in subsection (c) of this section, the Commission may not modify an award unless the modification is applied for within 5 years after the last *compensation* payment.[11] [Emphasis added].

This case requires us to determine the content of the word "compensation". We start in the definitions section of the Maryland Workers' Compensation Act, § 9-101, where the General Assembly has provided:

### § 9-101. Definitions.

*(a) In general.*—In this title the following words have the meanings indicated.

.     .     .     .     .

*(e) Compensation.*—

(1) "Compensation" means the money payable under this title to a covered employee or the dependents of a covered employee.

(2) "Compensation" includes funeral benefits payable under this title.

Faced with a similar statutory definition,[12] this Court in *Chanticleer Skyline Room, Inc. v. Greer*, 271 Md. 693, 319

---

11. The reopening provision exists, typically, but not exclusively, *see Stevenson v. Hill*, 170 Md. 676, 185 A. 551 (1936) (reopen provision may be used to introduce new evidence), for situations in which a claimant's condition degenerates, entitling the claimant to increased benefits. Maryland's reopening provision has been described as "one of the widest reopening provisions in the country." Richard P. Gilbert & Robert L. Humphreys, Jr., *Maryland Workers' Compensation Handbook* 155 (2d ed. 1993). Judge Rodowsky's opinion for this Court in *Holy Cross Hosp. v. Nichols*, 290 Md. 149, 154, 428 A.2d 447, 449-50 (1981), gives an excellent review of the history of § 9-736.

12. The *Chanticleer* court was construing the definition of "compensation" found at Md.Code (1957, 1964 Repl.Vol.), Art. 101, § 67(5), "the money allowance payable to an employee or to his dependents as provided for in this article...."

A.2d 802 (1974) found that the definition of "compensation" should be parsed into three separate inquiries:

"1.  Is the payment ... a money allowance? [13]

2.  Is the payment provided for in the article? [14]

3.  Is it 'payable to an employee'?" [15]

*Chanticleer,* 271 Md. at 698, 319 A.2d at 804.

In *Chanticleer,* the Court determined that all three questions could be answered affirmatively.  Therefore, the Court held that the payment of attorney's fees ordered in that case was "compensation," and, as a result, the statute of limitations did not bar reopening the case.

In the instant case, the first two questions derived from *Chanticleer* are easily resolved.  First, the attorney's fees in question are a payment of money, thus satisfying the first test. Second, the award of attorney's fees and costs are authorized by law in this title in § 9–734, regarding frivolous proceedings. The only remaining question is whether the attorney's fees awarded in this case are "payable to an employee."

## IV.

*Chanticleer* is an important precedent for this case, not only for the insight it gives us in reading the definition in § 9–101(e), but also because it involved the question of whether an award of attorney's fees was "payable to an employee" and thus constituted "compensation."

---

**13.**  Under the language applicable when *Chanticleer* was decided, this test was for "money allowance."  Md.Code (1957, 1964 Repl.Vol.), § 67(5).  The recent recodification has simplified this to "money." § 9–101(e).

**14.**  The 1991 code revision changes this from "article" to "title," but the meaning is still to constrict the definition of "compensation" to payments provided pursuant to the Worker's Compensation Act.  § 9–101(e).

**15.**  There has been no relevant change in the requirement that compensation be payable to an employee.  § 9–101(e).

In *Chanticleer*, the claimant sought to reopen her claim in December of 1971. The last payment for her 30% permanent partial disability was made to her on February 23, 1966. Had that been all, her claim would have been time barred; however, the WCC had also directed that the claimant's attorney be allowed a $500 counsel fee to be paid "from the closing weeks of compensation due the claimant," but not until a pending appeal had been decided. That payment of attorney's fees was made on June 15, 1970. This Court was asked to decide if the payment of the attorney's fees was "compensation" within the meaning of the reopening provision. Our predecessors determined that if an award of attorney's fees met the criteria of the second and third sentences of Art. 101, § 57, in that they were approved by the WCC, made a lien against compensation and were payable only as directed by the Commission, the fees would be deemed "payable to the employee," and thus would satisfy the third prong of the test for "compensation." Because the attorney's fees in *Chanticleer* were granted in accordance with the second and third sentences of Art. 101, § 57, now § 9–731, they were compensation and the reopening in December of 1971 was not time barred.

█ As we have determined above, in this case the attorney's fees and costs were awarded as a sanction against Rite–Aid for its frivolous proceedings before the WCC under § 9–734. The attorney's fees in this case do not fit the *Chanticleer* model as they are not owed by the claimant to her attorney, but rather they are to be received from the opposing party. The attorney's fees were specifically not to be paid from the compensation awarded and did not constitute a lien against Ms. Stevens' compensation. Instead, they were to be paid directly by Rite–Aid to claimant's counsel. It is absolutely clear that these attorney's fees and costs were not "payable to an employee" and therefore, not compensation.

█ The statutory scheme thus divides awards of attorney's fees into two classes: compensatory attorney's fees awarded under § 9–731 and attorney's fees as a sanction

under § 9–734.[16]  *Chanticleer* determined that compensatory attorney's fees awarded under § 9–731 are also compensation as defined in § 9–736.  We hold that attorney's fees awarded as a sanction under § 9–734 are *not* "compensation" under § 9–736.  The indirect benefit to Ms. Stevens of her counsel receiving an award of attorney's fees does not transform the award into compensation.  We are compelled under the plain meaning of §§ 9–736, 9–101(e), and 9–734 to hold for Rite–Aid in this matter.  The general rule of liberal construction of the Workers' Compensation Act is not applicable to the limitations provision of § 9–736.  *Montgomery County v. McDonald,* 317 Md. 466, 472, 564 A.2d 797, 800 (1989).

Because the attorney's fees awarded in this case are not "compensation" within the meaning of § 9–736, Ms. Stevens' motion to reopen her case is time barred as a matter of law.

*JUDGEMENT AFFIRMED.  COSTS TO BE PAID BY THE APPELLANT.*

---

**16.**  The Court of Special Appeals pointed out additional evidence that the legislature intended two classes of attorney's fees, compensatory and those awarded as a sanction, in the legislative history of yet another section of the Workers' Compensation Article, § 9–728.  This section assesses penalties for late payments of an award of compensation.  The original purpose clause of the bill provided:

"For the purpose of requiring that a certain percentage of a workmen's compensation award be *given in addition to* the award if the award is not paid within a certain time.  (Emphasis added)."

Prior to adoption this was changed to:

"For the purpose of providing that a certain *penalty shall be paid* to a ... claimant, etc.  (Emphasis added)."

Judge Getty, speaking for the Court of Special Appeals, opined, and we agree, that this clearly shows a legislative intent to distinguish penalties from compensation.  *Stevens v. Rite–Aid Corp.,* 102 Md.App. 636, 643, 651 A.2d 397, 401 (1994).