679 A.2d 1094

Robert WASKIEWICZ

v.

GENERAL MOTORS CORPORATION.

No. 105, SEPT. TERM, 1995.

Court of Appeals of Maryland.

July 29, 1996.

David E. Fink (David Kimmelman, on brief) Baltimore, MD, for Petitioner.

Joseph F. Zauner III (Diane S. Deros, Mason, Ketterman & Morgan, on brief) Baltimore, MD, for Respondent.

Argued before MURPHY, C.J.; and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, BELL, and RAKER, JJ.

KARWACKI, Judge.

■ The Maryland Workers' Compensation Act, Maryland Code (1991 Repl.Vol.), § 9–101 *et seq.* of the Labor & Employment Article (hereinafter "the Act")[1], provides in § 9–502 for compensation for workers who are disabled as a result of an occupational disease. Such diseases are by nature insidious and gradual, worsening over time as an employee is continually exposed to the hazards of the disease. We are asked today to determine whether such continued exposure to hazardous workplace duties constitutes the basis for a new claim for benefits within the meaning of § 9–502, when the exposure does not cause a new disability but exacerbates an existing one for which the employee has already claimed workers' compensation benefits. We hold that, under § 9–502, an employee who has already claimed benefits for a disability caused by an occupational disease cannot base a new claim for benefits upon additional injurious exposures which cause a worsening of his or her condition but not a new disability.

## I.

The parties to this case stipulated in Circuit Court to the facts we recite here. Robert Waskiewicz, claimant and petitioner in this case, was employed as an assembly line worker by General Motors Corporation (hereinafter "GM") for twenty

---

1. All statutory references herein are to Maryland Code (1991), Labor & Employment Article, unless otherwise indicated.

years. Early on in his employment, in 1973, he developed bilateral carpal tunnel syndrome [2] as a result of his repetitive motion work on the assembly line. He underwent surgery for his condition, and filed a claim for workers' compensation benefits based on occupational disease.[3] In an order dated April 21, 1976, the Workers' Compensation Commission (hereinafter "the Commission") found that Mr. Waskiewicz had indeed fallen prey to the occupational disease of carpal tunnel syndrome. It awarded him certain temporary total and permanent partial disability benefits based on its finding that he had sustained a permanent disability of 15% loss of use of both hands.

Mr. Waskiewicz had further treatment for his carpal tunnel syndrome, including several surgeries, in 1976, 1983, 1986,

---

**2.** Carpal tunnel syndrome is defined as "a complex of symptoms resulting from compression of the median nerve in the carpal tunnel, with pain and burning or tingling paresthesias in the fingers and hand, sometimes extending to the elbow." *The Sloane–Dorland Annotated Medical–Legal Dictionary* (Richard Sloane, ed.) (1987) p. 689. The Supreme Court of Mississippi provided perhaps a more useful description, describing carpal tunnel syndrome as "an inflammatory disorder in which the tendons in the wrist area which are bound down by ligaments in a band-like fashion surrounding the wrist [become inflamed] due to excessive use, especially that might be seen with factory type work where one movement, motion, or job is done continuously...." *Segar v. Garan, Inc.*, 388 So.2d 164, 165 (Miss.1980). If the syndrome is "bilateral," it is occurring in both wrists.

**3.** "Occupational disease" is defined in § 9–101(g) of the Act thus:

"(g) *Occupational disease.*—"Occupational disease" means a disease contracted by a covered employee:

(1) as the result of and in the course of employment; and

(2) that causes the covered employee to become temporarily or permanently, partially or totally incapacitated."

Early on in the history of workers' compensation law we described an occupational disease as some ailment, disorder, or illness "which is the expectable result of working under conditions naturally inherent in the employment and inseparable therefrom, and is ordinarily slow and insidious in its approach." *Foble v. Knefely*, 176 Md. 474, 486, 6 A.2d 48, 53 (1939). Carpal tunnel syndrome certainly meets both the statutory definition as well as our description of an occupational disease, and appears in the case law to be generally accepted as an occupational disease compensable under the Act.

1987, 1988, and 1989.[4] The medical records in this case reflect that in 1987, as a result of his continuing pain and aggravation of his carpal tunnel syndrome, GM placed Mr. Waskiewicz on "light duty" involving no use of power tools or heavy lifting. Meanwhile, he continued under the constant care and treatment of his surgeon, Dr. Dennis Franks. In May 1991, Dr. Franks recommended to GM certain restrictions on Mr. Waskiewicz's work duties, including "no lifting, no repetitive motion and no use of air guns." Despite the physician's recommendation, and for reasons unexplained in the record, GM decided to place Mr. Waskiewicz back on the line in a job requiring the use of hand tools in a repetitive manner. As a result, his carpal tunnel syndrome worsened in both hands, confirmed by a nerve conduction test performed on February 27, 1992. On March 3, 1992, Dr. Franks recommended to Mr. Waskiewicz that he not return to work; the doctor performed more surgery in September 1992, but apparently to no avail, because Mr. Waskiewicz never returned to work. In March 1994, according to the joint "Stipulation of Agreed Facts and Agreed Issues" submitted to the trial judge in this case, "the doctor stated that as a result of [Mr. Waskiewicz's] carpal tunnel syndrome, caused by repetitive motion of the hands and the use of power tools, he could no longer engage in gainful employment." Although not specifically stated in the stipulated facts, the parties' briefs to this Court portray the claimant as suffering 100% loss of use of both hands.

On August 25, 1992, Mr. Waskiewicz filed the instant claim for compensation for disability beginning on March 3, 1992, resulting from carpal tunnel syndrome. He noted on his claim form that this was the only workers' compensation claim he had filed for "this Accident or Occupational Disease." At trial,

---

**4.** Mr. Waskiewicz also injured his right wrist in a workplace accident in 1988 unrelated to the carpal tunnel syndrome, according to the stipulated facts submitted to the trial judge. We cannot determine from the record whether Mr. Waskiewicz pursued a successful workers' compensation claim for that injury or to what extent the injury caused the later surgeries and diminished capacity. As the parties have made no arguments concerning the incident or how it relates to his current total disability, we will not speculate further.

however, he stipulated to the contrary that "the Claimant's bilateral carpal tunnel syndrome is the disease from which he has suffered in varying degrees since it was first diagnosed in the early 1970s . . . ." Mr. Waskiewicz did not file a request to reopen his previous claim for carpal tunnel syndrome, for which he had last received permanent partial disability compensation in 1976.

The Commission disallowed Mr. Waskiewicz's claim on May 26, 1993, tersely stating that "the claimant did not sustain an occupational disease of carpal tunnel syndrome arising out of and in the course of employment as alleged to have occurred on 3/3/92 . . . ." The reasoning of the Commission is not illuminated either by the transcript of the Commission hearing or the one-sentence order, but we glean from its holding that the Commission did not regard Mr. Waskiewicz's condition in 1992 as a *new* occupational disease. Mr. Waskiewicz appealed the Commission's decision to the Circuit Court for Baltimore City, where the case was tried before a judge without a jury. The trial judge reversed the Commission in an oral opinion. He reasoned that the 1992 date of Mr. Waskiewicz's most recent injurious exposure to the hazards of the occupational disease, which caused total disability, effectively constituted a new compensable event. To relate Mr. Waskiewicz's current condition and most recent exposures back to the first date of partial disablement in the 1970s, the trial judge ruled, would "unnecessarily create a hardship and would result in an unreasonable interpretation of [§ 9–502]."

The Court of Special Appeals reversed the trial court in an unreported opinion, agreeing with the Commission that Mr. Waskiewicz did not sustain a new disablement in 1992 and finding his current injury instead to be an aggravation of an existing disability from 1973. The intermediate appellate court noted that continued injurious exposures to hazards of an occupational disease leading to aggravation of the existing disease and resulting disability could not be the basis for a new claim under § 9–502. The court also pointed out that Mr. Waskiewicz could only have recovered compensation for his current 100% disability through a reopening and modification

of his 1973 claim, but that the five-year statute of limitations on the reopening of claims found in § 9–736 of the Act barred any attempt to reopen.

## II.

The question of first impression the instant case presents is simply whether a *new* workers' compensation claim, rather than a request for modification of an existing award, can be based on an additional injurious *exposure* to hazards aggravating an existing disability resulting from an occupational disease. The answer is no. Mr. Waskiewicz's increase in disability due to carpal tunnel syndrome from 15% loss of use of both hands to 100% loss of use is non-compensable under the current statutory scheme. We review the parties' arguments within the context of the relevant law to explain our holding.

### a.

Mr. Waskiewicz argues that the Court of Special Appeals misinterpreted the facts when it first regarded his claim of August 25, 1992, as an attempt to reopen his original 1973 claim, an attempt barred by the statute of limitations found in § 9–736(b)(3) of the Act. Instead, contends Mr. Waskiewicz in his brief to this Court, the 1992 claim is "an entirely new claim for a new exposure which caused him to become totally disabled due to the occupational disease," brought under § 9–502. Mr. Waskiewicz essentially asks us to hold that any injurious exposure worsening a disability for which compensation has already been paid is sufficient to support a new claim, not simply a reconsideration of the existing claim.

GM, naturally, disputes Mr. Waskiewicz's interpretation of the stipulated facts and the law. The company contends to the contrary that, while the worsening of an existing disability caused by an additional injurious exposure may support a modification of an original award within the limitations period of § 9–736, it does not create a right to file a new claim.

Section 9–502 of the Act provides in relevant part:

"**§ 9–502. Occupational disease—Compensation.**

(a) *'Disablement' defined.*—In this section, 'disablement' means the event of a covered employee becoming partially or totally incapacitated:

(1) because of an occupational disease; and

(2) from performing the work of the covered employee in the last occupation in which the covered employee was injuriously exposed to the hazards of the occupational disease.

(b) *Scope of application to employer and insurer.*—Subsection (c) of this section applies only to:

(1) the employer in whose employment the covered employee was last injuriously exposed to the hazards of the occupational disease; and

(2) the insurer liable for the risk when the covered employee, while employed by the employer, was last injuriously exposed to the hazards of the occupational disease.

(c) *Liability of employer and insurer.*—Subject to subsection (d) of this section and except as otherwise provided, an employer and insurer to whom this subsection applies shall provide compensation in accordance with this title to:

(1) a covered employee of the employer for disability of the covered employee resulting from an occupational disease;

. . . .

To bolster his claim that he is entitled to compensation, Mr. Waskiewicz proposes a strained interpretation of subsection (a) of § 9–502, which merely defines "disablement."[5] By his account, "[b]y this provision, the Legislature intended that *whenever* an employee is exposed to the hazards of an occupational disease and he thereby becomes 'precluded from per-

---

**5.** Mr. Waskiewicz actually bases his argument to this Court on § 9–502's predecessor statute, § 22(a) of Article 101. The claim at issue here, his second claim for workers' compensation for carpal tunnel syndrome, was filed in 1992, after the revision of the Code and the recodification of the Workers' Compensation Act in Title 9 of the Labor & Employment Article. The current statute applies and we discuss his arguments within the context of § 9–502.

forming his work in the last occupation in which he was injuriously exposed,' he 'shall be entitled to compensation.'" (Emphasis added.) Although we are not insensitive to Mr. Waskiewicz's predicament, we find his interpretation of the statute rather disingenuous.

We note preliminarily that Mr. Waskiewicz has misquoted the statutory provisions when he uses the phrase "*precluded* from performing his work"; the statute includes "partial" incapacitation in the definition of "disablement," such as Mr. Waskiewicz's partial incapacitation of 15% loss of use of his hands in 1974, which hindered but did not "preclude" him from performing his work.

Second, Mr. Waskiewicz mistakenly interprets the language in subsection (a), "... in the last occupation in which the covered employee was injuriously exposed to the hazards of the occupational disease," to argue that the last injurious exposure to the hazards of a disease, whether occurring before or after the disease becomes disabling, is effectively a compensable event. This is simply an incorrect reading of the language of the statute, a reading which conflicts with the rest of § 9–502 as well as other parts of the Act.

GM argues correctly that under § 9–502(a) an event of disablement resulting from an occupational disease is the *only* event entitling a claimant to compensation. Compensation is awarded under § 9–502(c) on the basis of the singular event of disablement: "... an employer ... shall provide compensation in accordance with this title to ... a covered employee of the employer for *disability* of the covered employee...."

The language Mr. Waskiewicz cites is merely a part of the definition of "disablement." "Disablement," by the plain meaning of the language, is defined as a singular "event" of becoming partially or totally incapacitated because of an occupational disease, not as a series of exposures to the hazards of the same disease. Included within the definition of "disablement" is phrasing indicating exactly *what* the employee is "partially or totally incapacitated ... from ...": not simply the performance of any work whatsoever, but specifically from

performing "the work of the covered employee in the last occupation in which the covered employee was injuriously exposed to the hazards of the occupational disease." In other words, in order to be found "disabled," an employee does not have be precluded by virtue of his disability from doing *anything,* but rather must be incapacitated only from the last type of occupation which exposed him to the disease. *See Adams v. Western Electric Co.,* 63 Md.App. 587, 592–93, 493 A.2d 392, 395 (1985). The purpose of the phrase upon which Mr. Waskiewicz bases his claim is simply to clarify that disablement refers only to a limited scope of incapacitation from "the last occupation in which the covered employee was injuriously exposed."

Allowing new claims for each exposure after the date of disablement would render subsection (c) meaningless, because one could never pinpoint the compensable event of "disability." Moreover, a careful reading of subsection (b) demonstrates that an injurious exposure only has relevance in identifying the liable employer on the date of disablement: the "last" injurious exposure is the last exposure contributing to the *onset* of a disability, not its exacerbation.[6] Once the date of

---

**6.** Subsection (b) of the statute assigns liability for disability caused by an occupational disease to the last "causal employer"; that is, in the words of the statute, to the employer "in whose employment the covered employee was last injuriously exposed to the hazards of the occupational disease." Known as "the last injurious exposure rule," the cited language in § 9–502 is typically used when the employee has endured in *multiple* workplaces the same hazards ultimately causing the occupational disease leading to disability. *See, e.g., Lowery v. McCormick Asbestos Co.,* 300 Md. 28, 475 A.2d 1168 (1984); *CES Card v. Doub,* 104 Md.App. 301, 656 A.2d 332 (1995).

The Court of Special Appeals carefully reviewed the relationship between date of disablement and date of last injurious exposure to the hazards of an occupational disease in *CES Card, supra,* another carpal tunnel syndrome case. In *CES Card,* an issue arose over which of two successive employers exposing Ms. Doub to the hazards of carpal tunnel syndrome would be liable for her workers' compensation benefits. In the course of determining the last injurious exposure which would then identify the liable employer, the intermediate appellate court noted that it was impossible for the date of the last injurious exposure to be later than the date of disablement, because the last

disability is determined, insurers and courts use the "last" exposure before a disability arises only to determine where the employee was working on the date of disablement and which employer will therefore be charged with compensation under subsection (c).[7] *CES Card v. Doub,* 104 Md.App. 301, 656 A.2d 332 (1995). An injurious exposure is not, and cannot by definition be, in itself a trigger for compensation, or a liable employer could never be ascertained and subsection (b) would also be meaningless.

Mr. Waskiewicz's theory of exposure to the hazards of an occupational disease as a compensable event in itself, if put into practice, would lead to untenable outcomes. For example, if his theory prevailed, one might successfully argue that each day of work following the first claim of disability contributed, however slightly, to a worsening of the disability, thereby entitling the claimant to a new claim each day.

b.

On the plain language of the statute, therefore, Mr. Waskiewicz's interpretation of § 9–502(a) is not persuasive. Moreover, the General Assembly could not have intended such an outcome, or they would not have enacted the reopen provision found in § 9–736 of the Act to address the aggravation of existing disabilities. Section 9–736 grants continuing jurisdiction over workers' compensation claims to the Commission and

---

injurious exposure by definition "caused" the disablement rather than aggravated it:

"[W]e hold that in occupational disease cases the date of last injurious exposure can never come after the date of disability. In effect, we are defining 'injurious exposure' as an exposure that contributed to the *onset* of disability—not one that may have exacerbated an existing disability." *CES Card, supra,* 104 Md.App. at 314, 656 A.2d at 338.

The Court of Special Appeals' reasoning in *CES Card* is sound and we adopt it.

7.   Certainly, however, if only one employer has exposed the employee to the hazards of the occupational disease in the employee's work history, then that single employer will be the liable party under § 9–502. In this case, therefore, if Waskiewicz is indeed entitled to compensation, GM would be, without question, the liable employer.

provides for modification of a workers' compensation award if aggravation of a disability occurs after the original rate of compensation has been set or terminated:

"**§ 9–736. Readjustment; continuing powers and jurisdiction; modification.**

(a) *Readjustment of rate of compensation.*—If aggravation, diminution, or termination of disability takes place or is discovered after the rate of compensation is set or compensation is terminated, the Commission, on the application of any party in interest or on its own motion, may:

(1) readjust for future application the rate of compensation; or

(2) if appropriate, terminate the payments.

(b) *Continuing powers and jurisdiction; modification.*—(1) The Commission has continuing powers and jurisdiction over each claim under this title.

(2) Subject to paragraph (3) of this subsection, the Commission may modify any finding or order as the Commission considers justified.

(3) Except as provided in subsection (c) of this section, the Commission may not modify an award unless the modification is applied for within 5 years after the last compensation payment.[8]

The statute expressly and unequivocally grants power to the Commission to modify awards as it considers just, even on its own motion. It also, unfortunately for Mr. Waskiewicz, limits the power of the Commission to make modifications to an original award to a five-year period following the last payment of compensation to the claimant.

We extensively reviewed the history and purposes of the statute of limitations on modifications of awards most recently in *Vest v. Giant Food Stores, Inc.*, 329 Md. 461, 620 A.2d 340 (1993), and reiterated the straightforward rule of the statute.

---

**8.** Subsection (c) of § 9–736 addresses estoppel or fraud preventing a claimant from filing an application for modification under this section; the subsection has no relevance to the instant case.

The petitioner Vest suffered a compensable back injury and received temporary total and then partial disability benefits over the course of eighteen months. Seven years from the date of his last payment of compensation, Vest attempted to reopen his claim based on a worsening of his back condition, arguing in part that the statute of limitations in § 40(c) of Article 101 (predecessor statute to § 9–736) was inapplicable because his case was decided on the record without a hearing.

In rejecting his contention, we held that the five-year period of limitations for modifications applies to all awards, quoting from a well-known authority on workers' compensation on the purpose of statutory time limits on reopening cases:

"As Professor Larson has noted:

'[A]ny attempt to reopen a case based on an injury ten or fifteen years old must necessarily encounter awkward problems of proof, because of the long delay and the difficulty of determining the relationship between some ancient injury and a present aggravated disability. Another argument is that the insurance carriers would never know what kind of future liabilities they might incur, and would have difficulty in computing appropriate reserves.' (Footnotes omitted.)

2 A. Larson, *Workmen's Compensation*, § 81.10, at 15–94 to 15–95 (Desk ed. 1976). A total absence of any limitations period for the many cases decided on the record would only further compound such risks and potentially overload the Commission's docket."

*Vest*, 329 Md. at 471, 620 A.2d at 344. We further noted in *Vest* that the Commission could not even reserve to itself the power to reopen a case past the five-year time period, as the same statute granting the broadest power of continuing jurisdiction over prior awards to the Commission also explicitly limited its exercise to a defined five-year period, and thereafter actually divested the Commission of any authority to reopen:

"The Commission cannot bypass the statutory restriction on its authority. An agency 'cannot override the plain meaning

of the statute or extend its provisions beyond the clear import of the language employed.'  It is clear from the history of § 40(c) that, by enacting a limitations provision, the General Assembly restricted the Commission's ability to exercise its authority to reopen prior awards."  (Citations omitted.)

*Id.* at 475–76, 620 A.2d at 347.

Mr. Waskiewicz must have recognized that he could not prevail under the plain meaning of the reopening statute as well as our case law, because his original award was made more than five years before his condition worsened so dramatically.  Therefore, he did not file an application for modification, and before us attempts to distinguish his particular situation from a simple reopening of an existing claim.  The essence of Mr. Waskiewicz's argument is that his additional and injurious exposure to the hazards of carpal tunnel syndrome, caused by his *return* to the assembly line *after* having been removed from the assembly line, was more analogous to a new accidental personal injury than an aggravation of an existing disability.  Thus, just as employees who are re-injured on the job because of another accident are entitled to file a new workers' compensation claim under § 9–501 of the Act, so should he be entitled to file a new claim because of another "injurious exposure" under § 9–502(a) of the Act.

We question the underlying assumptions in Mr. Waskiewicz's analogy.  It seems quite clear that if Mr. Waskiewicz had suffered the disability in the 1970s and stayed on the assembly line without interruption, and his carpal tunnel syndrome continued to worsen over that time, his only opportunity for increased benefits would be under the reopening provision.  Thus we must assume that Mr. Waskiewicz's argument before us is founded on the notion that the employer's actions in removing him from and then reassigning him to the repetitive motion work were the significant events triggering a new claim.  Although Mr. Waskiewicz does not explicitly argue that his employer acted in bad faith, negligently, or intentionally, GM's "fault" impliedly underlies Mr. Waskiewicz's entire theory of recovery.  Workers' compensation is a "no-fault"

system, rendering the very foundation of Mr. Waskiewicz's argument quite shaky.

Second, Mr. Waskiewicz asserts in his brief that the five-year limitations period on reopening a claim simply does not apply in his circumstances:

> "The five year limitations provision, however, was never intended to bar a new claim when the employer *again* exposed such an employee to the distinct employment hazards of the occupational disease and thereby caused an increased disablement. He is certainly entitled to maintain a claim for additional compensation for the increase in his disability, just as any employee would be entitled if he sustained a new accidental injury which worsened his prior disability." (Citations omitted and emphasis added.)

■ Mr. Waskiewicz does not support his analysis of the intention of the Legislature with any legislative history of § 9–736 or other authority, nor could we locate any. While we must acknowledge some seeming unfairness in the instant case, we have also recognized the legitimate purposes of limitations periods, and noted that all bright-line rules will occasionally result in some individual unfairness. *See Debusk v. Johns Hopkins Hospital,* 342 Md. 432, 677 A.2d 73 (1996); *Lowery, supra.* That the result in an particular case seems harsh is thus not enough to overcome the bar on reopening a claim after five years. *See Stevens v. Rite–Aid Corp.,* 340 Md. 555, 568, 667 A.2d 642, 649 (1995) ("The general rule of liberal construction of the Workers' Compensation Act is not applicable to the limitations provision of § 9–736"); *Montgomery County v. McDonald,* 317 Md. 466, 472, 564 A.2d 797, 800 (1989) ("a liberal rule of construction does not mean that courts are free to disregard the provisions comprising the Act").

Moreover, his contention that his claim is analogous to a *new* injury is simply unpersuasive, on the basis of the facts to which he stipulated.

In *Stevens, supra,* we noted that the reopening provision typically exists "for situations in which a claimant's condition

degenerates, entitling the claimant to increased benefits." *Id.* at 565 n. 11, 667 A.2d at 647 n. 11. Such is the simple case here: Mr. Waskiewicz has been suffering from a condition which has drastically degenerated since his original rate of permanent partial disability compensation was set. Mr. Waskiewicz, in the "Stipulation of Agreed Facts and Agreed Issues" submitted to the trial court, admitted that his current carpal tunnel syndrome is "the disease from which he has suffered in varying degrees since it was first diagnosed in the early 1970s," with the recent aggravation from 15% permanent loss of use to 100% permanent loss of use occurring "as a result of his last injurious exposure on March 2, 1992." We are in accord with the intermediate appellate court that this stipulated fact alone prevents us from ruling in favor of Mr. Waskiewicz:

> "[Waskiewicz] first suffered a disability for carpal tunnel syndrome in 1973. His last injurious exposure for purposes of filing a claim, therefore, occurred prior to his disability from carpal tunnel syndrome in 1973. His subsequent exposures cannot be the basis of filing a new claim. In short, any recovery for his current injury could only have been secured by a reopening of his original claim. Since it is now too late to reopen that claim, his current injury is not compensable. While this is a harsh result, the statute does not permit a subsequent claim in accordance with the facts agreed upon."

### III.

We recognize that the recent aggravation of Mr. Waskiewicz's disability occurred at least in part because GM knowingly removed him from light duty and placed him at risk of such aggravation by assigning him back to an assembly line job where his duties would include repetitive hand motions. Were the issue before us a question of equity rather than statutory law, GM would surely not fare so well. Unfortunately for Mr. Waskiewicz, however, the workers' compensation statutory scheme specifically addresses his situation and thus preempts exercise of our equitable powers.

We conclude that, for Mr. Waskiewicz to prevail, we would have to hold that the removal from line work and then harmful re-exposure constituted a new compensable event not recognized in the Act. Although the reassignment to a hazardous set of duties is somewhat analogous to a new accidental injury causing a new disability, as Mr. Waskiewicz has argued, the analogy is not persuasive enough to cause this Court to overstep its boundaries by judicially modifying the Act. As we discussed recently in *Debusk, supra,* one of the key virtues of a *statutory* workers' compensation system is its predictability. The General Assembly has determined that both a disablement resulting from an occupational disease and an accidental personal injury on the job constitute compensable events under the statutory scheme; it has not determined, at least as of the date of this opinion, that an employer's knowing reassignment of an already disabled worker to hazardous duty, without more, is a compensable event.[9] Perhaps it

9. Of course, if an employee entered a workplace with some type of preexisting impairment or condition, and then suffered a *subsequent* workplace accident or occupational disease, he would be entitled to compensation for the proportion of the disability attributable to the subsequent accident or disease. Sections 9–655, 9–656 and 9–802 govern both the liability of the last place of employment and the ultimate compensation to the claimant.

Sections 9–655 and 9–656 provide for statutory apportionment of compensation between a "preexisting disease or infirmity," and a subsequent accident or occupational disease, in cases of permanent disability of less than 50% of the body as a whole. The claimant is entitled to benefits for the proportion of the disability reasonably attributable to the subsequent accident or disease, but not for the proportion of the disability attributable to the preexisting disease or infirmity.

If a covered employee with a preexisting permanent impairment suffers a subsequent accident or occupational disease resulting in disability of *more* than 50% of the body as a whole, § 9–802 and the Subsequent Injury Fund become relevant. Section 9–802 requires that the disability be substantially greater due to the combined effects of the preexisting permanent impairment and the subsequent compensable event; the employer is then responsible for only the compensation which would have been payable for the subsequent compensable event. If the numerous factors in § 9–802(b) are met, the employee may also be entitled to additional benefits from the Subsequent Injury Fund.

Neither apportionment under § 9–656 nor the Subsequent Injury Fund under § 9–802 are applicable in this case, because both require

should make such a determination, as the situation before us, on the stipulated facts, appears particularly unfair; but if *we* held that GM's actions in re-assigning Mr. Waskiewicz to job duties he had held in the past constituted a compensable event, we would be in essence writing new legislation. This Court cannot and will not usurp the General Assembly's authority to expand the scope of the Act in this manner.

*JUDGMENT AFFIRMED, WITH COSTS.*

Dissenting Opinion by CHASANOW, J., in which ELDRIDGE and BELL, JJ., join.

CHASANOW, Judge, dissenting.

The majority holds that the Workers' Compensation Act (the Act), Maryland Code (1991 Repl.Vol., 1995 Supp.), Labor and Employment Article, § 9–101 *et seq.*,[1] bars a disabled worker from maintaining a claim for a permanent total disability from an occupational disease that occurred in 1992, simply because the worker received an award for a 15 percent disability from the same occupational disease 16 years earlier. In reaching this result, the majority recognizes that its holding has "some seeming unfairness," 342 Md. at 712, 679 A.2d at 1101, and "appears particularly unfair," 342 Md. at 715, 679 A.2d at 1102.

The facts in the instant case are undisputed. Waskiewicz developed carpal tunnel syndrome in 1973, and in 1976 he received workers' compensation benefits for a permanent partial disability of 15 percent. During the 1980s, Waskiewicz continued to receive further treatment for carpal tunnel syndrome and was placed on light duty that involved no use of power tools and no heavy lifting. In 1991, Waskiewicz's

---

both a preexisting impairment and a subsequent accidental injury or occupational disease. Mr. Waskiewicz did return to his line job with a preexisting disease, but did not, as we have discussed at length already, suffer a subsequent occupational disease.

1. All statutory references are to Maryland Code (1991 Repl.Vol., 1995 Supp.), Labor and Employment Article.

physician specifically directed General Motors to assign Waskiewicz only to jobs with "no lifting, no repetitive motion and no use of air guns." Despite this warning, General Motors again placed Waskiewicz in a job where he was required to use hand tools in a repetitive manner. As a result of this new workplace exposure, Waskiewicz's carpal tunnel syndrome worsened, and the parties have agreed that he is now totally disabled and unable to engage in any gainful employment.

In ruling against Waskiewicz, the majority asserts that he "does not support his analysis of the intention of the Legislature with any legislative history of § 9–736 or other authority, nor could we locate any." 342 Md. at 712, 679 A.2d at 1101. I disagree. The legislature has mandated in § 9–102 that the Act is to be construed liberally in favor of workers like Waskiewicz. That mandate can be considered a part of the Act's legislative history. Moreover, the fundamental rule that the Act should be construed liberally in favor of workers has been recognized by this Court in numerous cases. *See Para v. Richards Group,* 339 Md. 241, 251, 661 A.2d 737, 742 (1995) (noting that the Act " 'should be construed as liberally in favor of injured employees as its provisions will permit in order to effectuate its benevolent purposes' ") (citations omitted); *Vest v. Giant Food Stores, Inc.,* 329 Md. 461, 467, 620 A.2d 340, 342 (1993); *Howard Co. Ass'n. for Retard. Cit. v. Walls,* 288 Md. 526, 530, 418 A.2d 1210, 1213 (1980).

Instead of construing the Act liberally in favor of the disabled employee, the majority seems to construe all ambiguous provisions against the worker and holds that Waskiewicz cannot recover compensation for his increased disability either through a reopening of his 1976 claim or by filing a new claim based solely on his 1992 increase in disability. According to the majority, once a worker is deemed "disabled" from an occupational disease, that worker cannot recover for any increase in disability, even though it was caused by a new exposure to workplace hazards, unless the worker files for a reopening of his or her original award within five years of the last payment on the original claim. Because Waskiewicz did not file for a reopening of his original 15 percent disability

claim within five years, the majority holds that he is barred under § 9–736 from recovering for his increased disability.

Of course, the reason Waskiewicz could not apply for an increase in his compensation within five years of the 1976 award was because the second injurious exposure that caused his increased disability *did not even occur* until 1992, more than 15 years later. In essence, the majority holds that the statute of limitations on Waskiewicz's claim for total disability expired ten years before the total disability had even occurred. Surely the legislature did not intend that the five-year limitation on reopening an award would bar recovery for an increase in disability caused, not by the natural progression of the disease, but by a *subsequent injurious exposure* to workplace hazards. *See Uninsured Employers' v. Lutter,* 342 Md. 334, 346, 676 A.2d 51, 57 (1996) (noting that courts should avoid absurd or unreasonable results when construing statutes).

The majority's holding should result in a great increase in trivial motions to modify permanent partial disability awards. A worker who receives an award based on a permanent partial disability from an occupational disease will have to file for a modification for any increase in disability every four or five years or risk losing the right to additional compensation should his or her occupational disease worsen substantially due to continued exposure to employment hazards.

The majority apparently concedes that if Waskiewicz's increase in disability had resulted from a *new accidental injury* he suffered more than five years after his 1976 disability award ended, he would be entitled to additional compensation under § 9–501 for the increase in his disability. 342 Md. at 711, 679 A.2d at 1100. But because Waskiewicz's increase in disability resulted from *additional exposure* to the hazards of an occupational disease, the majority holds that he is not entitled to additional compensation. There is no reason to treat employees whose disabilities are exacerbated because of an additional accidental injury on the job differently from employees whose occupational disease is exacerbated because of an additional injurious exposure on the job. Nothing in

§ 9–501 or § 9–502, or any other provision in the Act, requires such unfair and disparate treatment of employees with occupational diseases. In fact, this Court has previously recognized that the Act reflects the legislature's intent to treat disability "from occupational disease . . . much like an injury caused by accident." *Shifflett v. Powhattan Mining Co.*, 293 Md. 198, 202, 442 A.2d 980, 983 (1982).

Contrary to the majority's construction, I believe the legislature intended to allow workers who have suffered partial disability as a result of an occupational disease to recover for any increased disability resulting not from a natural progression of the disease but from a *new exposure* to employment hazards. If the increase in disability occurs within five years of the last compensation payment, the legislature has provided that the employee may file to reopen the claim under § 9–736. If, on the other hand, there is an additional work-induced increase in the disability that occurs more than five years after the last payment, the worker should be allowed to file a new claim for benefits for the additional disability under § 9–656 or § 9–802.[2] Section 9–656 provides:

"(a) *Determination by Commission.*—If it appears that a permanent disability of a covered employee following an accidental personal injury or occupational disease is due partly to the accidental personal injury or occupational disease and partly to a preexisting disease or infirmity, the Commission shall determine:

---

2. Section 9–656 applies in cases where the combined effects of a preexisting infirmity and a subsequent occupational disease result in a permanent disability that does not exceed 50 percent of the body as a whole. *See* § 9–655. In cases where the combined effects result in a disability that does exceed 50 percent of the body as a whole, § 9–802 applies. Under § 9–802(a), the employer is liable only for the disability caused by the subsequent occupational disease. The employee is also entitled to additional compensation from the state Subsequent Injury Fund if the combined effects of the preexisting condition and the subsequent occupational disease cause a "substantially greater" disability than would have been the case from the subsequent occupational disease alone. § 9–802(b).

(1) the proportion of the disability that is reasonably attributable to the accidental personal injury or occupational disease; and

(2) the proportion of the disability that is reasonably attributable to the preexisting disease or infirmity.

(b) *Payment of compensation.*—The covered employee:

(1) *is entitled to compensation for the portion of the disability of the covered employee that is reasonably attributable solely to the accidental personal injury or occupational disease;* and

(2) is not entitled to compensation for the portion of the disability that is reasonably attributable to the preexisting disease or infirmity." (Emphasis added).

Section 9–802 provides in pertinent part:

"(a) *Limitation on liability of employer and insurer.*—If a covered employee has a *permanent impairment* and suffers a *subsequent* accidental personal injury, *occupational disease,* or compensable hernia resulting in permanent partial or permanent total disability that is substantially greater due to the combined effects of the previous impairment and the subsequent compensable event than it would have been from the subsequent compensable event alone, the *employer or its insurer is liable* only *for the compensation payable under this title for the* subsequent accidental personal injury, *occupational disease,* or compensable hernia." (Emphasis added).

There is nothing in the language of § 9–656 or § 9–802 to preclude Waskiewicz's original 15 percent disability from carpal tunnel syndrome from being considered a "preexisting disease" or a "permanent impairment." If his original disability is a preexisting impairment under § 9–656 or § 9–802, it seems clear that Waskiewicz should be entitled to compensation for the portion of his current disability reasonably attributable to his new exposure.

The majority dismisses this construction of § 9–656 and § 9–802 summarily in a footnote by simply pronouncing that Waskiewicz did not "suffer a subsequent occupational disease."

342 Md. at 714 n. 9, 679 A.2d at 1102 n. 9. Apparently, the majority concludes that Waskiewicz cannot maintain a new claim for additional compensation under § 9–656 or § 9–802 because Waskiewicz's preexisting infirmity as well as his subsequent occupational disease were both carpal tunnel syndrome. In other words, the majority engrafts onto § 9–656 and § 9–802 a requirement that the worker suffering from a preexisting infirmity suffer a *subsequent and different* occupational disease in order to qualify for compensation. The majority cites no authority or legislative history to support its view that this admittedly unfair result is what the legislature intended.

Neither § 9–656 nor § 9–802 contains any requirement that an employee suffer a *subsequent and different* occupational disease in order to qualify for compensation. These provisions merely require that an employee be permanently disabled due partly to a preexisting disease and partly to a subsequent occupational disease. That is exactly what is alleged to have occurred in the instant case. There is no dispute that Waskiewicz suffered from carpal tunnel syndrome when General Motors assigned him in 1991 to work with hand tools in a repetitive manner. It is also stipulated that this repetitive work in 1991 and 1992 resulted in a subsequent worsening of the carpal tunnel syndrome to the point that Waskiewicz became unable to work. Sections 9–656 and 9–802 do not require that a worker's preexisting disease be of a different type than the subsequent occupational disease. We should not read such a requirement into the statute, especially when the result is to unfairly deny Waskiewicz workers' compensation benefits for a disability he received as a result of his employment.

The right to workers' compensation for a disability caused by an occupational disease is conferred by § 9–502(c), which provides:

"(c) *Liability of employer and insurer.*—Subject to subsection (d) of this section and except as otherwise provided, an employer and insurer to whom this subsection applies shall provide compensation in accordance with this title to:

(1) a covered employee of the employer for disability of the covered employee resulting from an occupational disease; or

(2) the dependents of the covered employee for death of the covered employee resulting from an occupational disease."

It seems to me that the majority is adopting a strained interpretation of § 9–502 in order to deny Waskiewicz compensation for his disability. The majority construes § 9–502 as only permitting a *single claim* for a single type of occupational disease, although that claim may be reopened within the five-year statutory period.[3] The majority's construction completely ignores subsection (e) of the statute that clearly envisions more than one claim for the same occupational disease and that would have been totally superfluous if the legislature

---

**3.** This Court on at least one occasion has tacitly approved the filing of two separate claims for disablement from the same occupational disease. In *Montgomery County v. McDonald,* 317 Md. 466, 564 A.2d 797 (1989), the employee suffered two heart attacks, one in 1977 and another in 1984. In 1984, he filed two separate occupational disease claims, one dating from the 1977 heart attack and the other dating from the 1984 heart attack. It was conceded that both attacks involved the same occupational disease. The Workers' Compensation Commission (the Commission) found the claim for the 1977 attack was barred by the statute of limitations. The Commission also found that the claim for the 1984 heart attack was barred by the statute of limitations because it was casually related to the 1977 heart attack. On appeal to the circuit court, the two claims were filed together under one case number. The circuit court held that the claim for the 1977 heart attack was not barred by the statute of limitations. The circuit court, however, did not make a specific ruling on the claim for the 1984 heart attack. The employer appealed the ruling on the claim for the 1977 heart attack, but there was no certification of the circuit court's order for immediate appeal under Maryland Rule 2–602(b). This Court reversed the circuit court and held that the claim for the 1977 heart attack was barred by the statute of limitations. In so doing, however, we indicated that the claim for the 1984 heart attack was not dependent on the 1977 claim and was still pending, even though it was for increased disability caused by the same occupational disease as the 1977 claim. *McDonald,* 317 Md. at 469 n. 2, 564 A.2d at 799 n. 2. This was at least a tacit acknowledgement that the 1984 occupational disease claim was a separate action and separately maintainable even though it was for the same disease and causally related to the 1977 claim, which was foreclosed by the statute of limitations.

intended to limit a worker to one claim for each type of occupational disease. Section 9–502(e) provides:

"(e) *False representation—Compensation prohibited.*—A covered employee or a dependent of the covered employee *is not entitled to compensation for a disability or death that results from an occupational disease if,* when the covered employee began employment with the employer, *the covered employee falsely represented in writing that the covered employee had not been disabled,* laid off, *or compensated* in damages or otherwise, *due to the occupational disease for which the covered employee or dependent is seeking compensation."* (Emphasis added).

Under this subsection, an employee is denied a second claim for compensation for an occupational disease if the employee has falsely represented in writing that the employee had not been previously disabled or compensated for the same occupational disease for which the employee is now seeking compensation. If a second claim for compensation for the same occupational disease were always barred, there would have been no reason for the legislature to specifically bar a second claim when the employee has lied about the prior disability or prior compensation.

The majority cites no cases from any jurisdiction to support its holding. The only appellate decision I have been able to locate that is clearly on point decides the issue contrary to the majority's holding. In *Mikitka v. Johns–Manville Products Corp.,* 139 N.J.Super. 66, 352 A.2d 591 (N.J.Super.Ct.App.Div.1976), the court faced a set of circumstances similar to that presented in the instant case. Mikitka, a worker who suffered from work-related asbestosis, received an award for a seven and one-half percent permanent disability. Despite her disability, Mikitka continued to work for her employer for several more years before retiring. After her retirement, Mikitka filed a new workers' compensation claim seeking additional compensation for an increase in her disability that resulted from continued exposure to employment hazards occurring after the initial award for a seven and one-half percent disability but before her retirement. The new

claim, however, was filed after the New Jersey statute's two-year statute of limitations for reopening a disability claim had expired. Nonetheless, the court held that Mikitka could maintain her claim for increased disability:

"In the present case, . . . petitioner has filed a new claim petition; she is not seeking modification of the [original] award. Rather, she contends that because of exposure to alleged deleterious conditions of employment occurring after entry of the 1967 award, she has suffered additional disability. This is a new claim, not an attempted modification of a prior award. [The] two-year time limitation [has] no application to this new claim.

   *    *    *    *    *    *

[W]here an employee has once recovered compensation for an occupational disease and thereafter suffers additional disability from additional exposure to the conditions of employment after rendition of the original award, such an employee can file a claim petition for the disability so caused within a year (or now two years) after the employee knew or ought to have known of the increased disability stemming from the continued employment despite knowledge as to the type of disability acquired in connection with the original award. This rule, to be applied in these limited circumstances, will avoid the absurd result of possibly barring claims before they even existed." (Citation omitted).

*Mikitka,* 352 A.2d at 593–94.

I believe a similar rationale should be applied in the instant case. Waskiewicz should be allowed to maintain a new claim for compensation for the increased disability he has suffered as a result of additional exposure to the employment hazards that caused his carpal tunnel syndrome to worsen. Accordingly, I dissent.

Judge Eldridge and Judge Bell have authorized me to state that they join in the views expressed in this dissenting opinion.