## CHANTICLEER SKYLINE ROOM, INC.
### ET AL. *v.* GREER

[No. 246, September Term, 1973.]

*Decided May 29, 1974.*

The cause was argued on March 28, 1974, before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE and ELDRIDGE, JJ., and reargued on April 30, 1974, before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and O'DONNELL, JJ.

*R. Roger Drechsler,* with whom were *Lord, Whip, Coughlan & Green* on the brief, for appellants.

*Maurice J. Pressman* for appellee.

DIGGES, J., delivered the opinion of the Court.

This litigation, which reaches us by writ of certiorari addressed to the Court of Special Appeals, has a history that is both protracted and involved. The issue presented for our determination, on the other hand, is both narrow and, as it develops, rather simple. We are asked to determine whether an application filed by the claimant, Bertha Lee Greer, the respondent here, seeking additional compensation from her former employer, Chanticleer Skyline Room, Inc., and its insurer, Maryland Indemnity & Fire Insurance Exchange, the petitioners, was submitted within the time limitations delineated in the Maryland Workmen's Compensation Act.[1]

---

1. This Act is codified in Maryland Code (1957, 1964 Repl. Vol., 1973 Cum. Supp.) Art. 101.

In an effort to place this issue in its proper perspective, we shall first relate a brief chronology of the undisputed events which have preceded this Court's present and its initial involvement with the litigation.

In the autumn of 1960, Mrs. Greer unfortunately sustained a back injury when she accidentally fell during the course of her employment as a waitress at the Chanticleer, a restaurant located in Baltimore City. As a consequence of this, on January 24, 1961, she was awarded compensation for her temporary total disability by the Workmen's Compensation Commission. Later that year, on April 13, the Commission ordered a supplemental award based on its finding that Mrs. Greer's temporary total disability ended on November 22, 1960, but that she had suffered a permanent partial disability of 10% which entitled her to an appropriate award of compensation under the "other cases" provisions of the Act. Maryland Code (1957) Art. 101, § 36 (4), *as amended*. In the summer of 1963, as a result of her suffering from persistent back problems, Mrs. Greer underwent a lumbar disc fusion operation. On October 17 of that same year, the Commission, following a hearing, found that this operation was necessitated by the injury sustained in the 1960 accident, and again awarded her temporary total disability compensation, this time computed from May 22, 1963. An appeal from this finding was noted by the petitioners to the Superior Court of Baltimore City which affirmed the Commission's order. Yet another hearing was held on February 15, 1966, and the Commission subsequently passed a further order on the twenty-third of that same month which terminated the October 17, 1963 temporary total disability payments as of March 1, 1965, and awarded Mrs. Greer compensation that was based on a 30% permanent partial disability. Once more the petitioners appealed. While the case was pending on this second appeal to the Superior Court of Baltimore City, the Commission passed an additional order on March 24 which directed that the respondent's attorney be allowed a $500 counsel fee [2] to

---

2. The order as written states:

"Ordered by the Workmen's Compensation Commission this 24th day of March, 1966, that Millard Esterson be and he is hereby

be paid "from the closing weeks of compensation due the claimant" but not until the outcome of the appeal from its February order had been determined.

Our attention now shifts to the Superior Court of Baltimore City where the case remained quiescent and neglected until it was dismissed by that court for want of prosecution on November 9, 1969. Spurred into action by this, the petitioners made a motion which was granted that reinstated the case on the trial docket. Then, for an unstated reason, they executed an about-face and voluntarily dismissed the appeal on March 24, 1970. Their dismissal brought this phase of the litigation to a close, and the counsel fee, which had been approved in 1966, was paid by the insurer to the attorney on June 15, 1970 from the final portion of the compensation awarded the claimant.

Alleging additional problems with her back and further medical expenses, in December of 1971, Mrs. Greer, by an application made in proper person, brought this case again before the Commission seeking an additional award. One more hearing was held in June of 1972, at which time the Commission by its order, although awarding Mrs. Greer reimbursement for some additional medical expenses, ruled that her request for further compensation was barred because it was not timely filed. On appeal by the claimant from that order, Judge Dorf, in granting her motion for summary judgment, ruled that the petition indeed had been filed on time. This judgment of the trial court was affirmed by the Court of Special Appeals in *Chanticleer Skyline Room v. Greer*, 19 Md. App. 100, 309 A. 2d 638 (1973), and we granted certiorari to consider the propriety of these rulings.

The claimant, throughout this phase of the litigation, has advanced three reasons to support her contention that the petition was seasonably filed; the acceptance of any one of which, she alleges, would compel the reversal of the Commission's June 1972 decision.

___

allowed the sum of $500 as counsel fees . . . said amount to be paid in a lump sum from the closing weeks of compensation due the Claimant under order of Workmen's Compensation Commission dated February 23, 1966."

Because these reasons are so inextricably associated with § 40 (c), that portion of the Act which controls the reopening of workmen's compensation claims, it is expeditious for us to first set out its provisions before we detail her position. Code (1957, 1964 Repl. Vol., 1973 Cum. Supp.) Art. 101, § 40 (c) reads:

> "Modifications or changes. — The powers and jurisdiction of the Commission over each case shall be continuing, and it may, from time to time, make such modifications or changes with respect to former findings or orders with respect thereto as in its opinion may be justified; provided, however, that no modification or change of any award of compensation shall be made by the Commission unless application therefor shall be made to the Commission *within five years next following the last payment of compensation.*" (emphasis added).

With this section of the Act in mind, the claimant's three reasons are more readily articulated. First, she argues that since the period of limitations under § 40 (c) begins to run with the last payment of compensation, and since the payment of a counsel fee is in reality the payment of compensation, and as the fee ordered in March of 1966 was not paid until June of 1970, therefore, limitations did not begin running until that latter date. Second, Mrs. Greer urges that since the payment for medical expenses also is compensation to the claimant within the contemplation of the Act, the petitioners' reimbursement to her in October 1971 for the cost of a back brace places the application well within the statutory limit set out in § 40 (c). Finally, she suggests that her application could not properly have been filed with the Commission until the appeal of the petitioners, which was noted on March 21, 1966, was resolved. In connection with this, the claimant reasons that the running of the statute of limitations was tolled from 1966 until 1970 because the Commission lacked subject matter jurisdiction to entertain such an application up until March 24, 1970, the date the 1966 appeal was dismissed. As

we agree with the Court of Special Appeals' acceptance of the respondent's initial reason for her contention that limitations have not run, we shall affirm the judgment of that court on this basis and leave a consideration of the other two for another case.

We begin our discussion by looking to the Act itself for assistance. "Compensation" is defined in the Code (1957, 1964 Repl. Vol.) Art. 101, § 67 (5) as "the money allowance payable to an employee or to his dependents as provided for in this article . . . ." This statutory characterization, while somewhat enlightening, serves more to send us down the path toward further inquiry than as a solution in and of itself to the question which confronts us. More precisely, broken into its component parts, this definition creates three separate issues which must be evaluated in order to determine whether the payment of the counsel fee in 1970 caused the running of limitations to begin anew. These are:

1. Is the payment of an attorney's fee a money allowance?
2. Is the payment provided for in the article?
3. Is it "payable to an employee"?

We think that the answer to each of these questions is in the affirmative as can be determined from a reading of § 57 of the Act — that section which controls the payment of such a fee. It provides:

> "If the Commission or the court before which any proceedings for compensation or concerning an award of compensation have been brought, under this article, determines that such proceedings have not been so brought upon reasonable ground, it shall assess the whole cost of the proceedings upon the party who has so brought them, including a reasonable attorney's fee. No person shall charge or collect any compensation for legal services in connection with any claims arising under this article, or for services or treatment rendered or supplies furnished pursuant to § 37 of this article, unless the same be approved by the Commission.

When so approved, *such fee or claims shall become a lien upon the compensation awarded,* but shall be *paid therefrom* only in the manner fixed by the Commission. Upon application of any party in interest, the Commission shall have full power to hear and determine any and all questions which may arise concerning legal services rendered in connection with any claim under this article and may order any attorney or other person receiving the same, to refund to the person paying the same, any portion of any charge for legal services which the Commission may, in its discretion, deem excessive. Orders of the Commission regulating payments and refunds for legal services may be enforced in the courts of this State, or may be appealed from in like manner as awards for compensation under this article." (emphasis added). Code (1957, 1964 Repl. Vol.) Art. 101, § 57.

Through § 57, the Legislature has attempted to formulate a comprehensive mechanism by which the award of an attorney's fee is regulated. This system is desirable because when the practice of requiring each party to pay his own lawyer

"is superimposed upon a closely-calculated system of wage-loss benefits, a serious question arises whether the social objectives of the legislation may to some extent be thwarted. The benefit scales are so tailored as to cover only the minimum support of the claimant during disability. There is nothing to indicate that the framers of the benefit rates included any padding to take care of legal and other expenses incurred in obtaining the award." *A. Larson, The Law of Workmen's Compensation* § 83.11 (1973).

Therefore, this statutory system acts to prohibit the dissipation of an employee's compensation through the payment of excessive legal fees out of the award by giving the Commission the power to regulate when and how much

remuneration an attorney who represents a claimant in workmen's compensation litigation is to receive from the employee for legal services rendered to him. As at least a partial *quid pro quo* for this invasion into an attorney's freedom to contract with his client concerning fees, this section affords counsel a degree of protection by imposing a statutory lien for his benefit upon a portion of the compensation awarded the employee. *Hoffman v. Liberty Mutual*, 232 Md. 51, 191 A. 2d 575 (1963).[3]

Clearly § 57 makes the payment of an attorney's fee both a "money allowance" and one which is "provided for in this article." Because no one here disputes these obvious answers, the focal point of the controversy has always been whether the attorney's fee allowed under § 57 is compensation payable to the employee. The petitioners contend that it is not. Instead, they allege that the Act creates a liability on their part for a fee payable to the claimant's counsel that is independent of the compensation which is payable to the employee. However, since the section states in clear and unambiguous language that the approved fee "shall become a lien upon the compensation awarded" the employee, we think that this section serves as a complete answer to this question as well. The code does not mandate, as the petitioners contend, that there be two *separate* awards payable by the employer and its insurer, one to the attorney, and another to the employee. Instead, a single award of compensation is made, that which is for the benefit of the employee, and the statute then merely gives an attorney a lien upon this compensation award to the extent of his fee as approved by the Commission. This does not change the underlying relationship which exists among the petitioners, the respondent, and her attorney. Nor is the ownership of the compensation award, which is a chose in

---

3. This, in effect, is a statutory "charging lien" upon the fund. We have recently had the opportunity to once more delineate what a "charging lien" is and to distinguish it from a "retaining lien." The former, in this State, is only created by statute while the latter is a common law lien (upon the papers and effects of a client which the attorney retains in his possession) still recognized in Maryland. For a fuller discussion see Campen v. The Talbot Bank of Easton, 271 Md. 610, 319 A. 2d 125 (1974); Ashman v. Schechter, 196 Md. 168, 173-76, 76 A. 2d 139 (1950).

action, destroyed simply because a statutory lien has been imposed upon it. Like any other lien, this lien does not create an ownership interest in the attorney, but merely places a charge upon the fund as security for the debt which is owed to the attorney by his client. *Westinghouse v. State Tax Comm.*, 206 Md. 392, 402, 111 A. 2d 661 (1955). The fact that no one can gain priority over this statutory attorney's lien or that the funds which have been secured for his benefit cannot be applied to reimburse an insurer for an overpayment to a claimant, *Hoffman, supra,* does not alter this in any way. Consequently, we affirm the judgment of the Court of Special Appeals.

> *Judgment of the Court of Special Appeals affirmed.*
> *Costs to be paid by the employer and insurer.*