651 A.2d 397

Viola M. STEVENS

v.

RITE–AID CORPORATION, et al.

No. 449, Sept. Term, 1994.

Court of Special Appeals of Maryland.

Dec. 30, 1994.

Philip Sturman (Anne E. Hoke–Witherspoon and Ingerman & Horwitz, on the brief), Baltimore, for appellant.

Michael S. Levin (Debra E. Gandel and Dirska & Levin, on the brief), Columbia, for appellees.

Argued before BLOOM and CATHELL, JJ., and JAMES S. GETTY, Judge (retired, Specially Assigned).

JAMES S. GETTY, Judge, Specially Assigned.

This litigation, which has evolved over a period of 12 years, presents for our determination an issue that has not been heretofore resolved. We are asked to determine whether a monetary award of an attorney's fee imposed by the Workers' Compensation Commission upon an employer/insurer for willful failure to comply with a prior order of the Commission may be considered "compensation" under § 9–101 of the Workers'

Compensation Act.[1]  Secondarily, we are asked whether, irrespective of our answer to the first issue, the employer/insurer is estopped from asserting the applicable statute of limitations in this case.

We begin with a chronology of events that preceded and culminated in this appeal.

Viola M. Stevens, appellant herein, was accidentally injured on March 12, 1981, in the course of her employment.  Between that date and her final claim for compensation filed in March 1991, appellant had approximately nine hearings before the Commission.  Three appeals were taken by the employer/insurer, appellee herein, from the rulings by the Commission.  One of those appeals, from a May 25, 1988, ruling by the Commission ordering appellee to provide a cervical fusion operation recommended by appellant's physician, was still pending in March 1991.[2]  Two of the nine hearings resulted in penalties being imposed on appellee in the form of attorney's fees and costs for causing frivolous proceedings to be filed.

On November 17, 1987, the Commission found appellee liable for payment of costs incurred by appellant for a cervical myelogram.  Appellee was ordered to pay $125 for the costs of the hearing before the Commission, plus a fee of $150 payable to appellant's counsel.  The penalties were imposed for what the Commission concluded was a frivolous proceeding relating to the necessity of, and payment for, the myelogram.

By order dated May 25, 1988, the Commission ordered that appellee authorize a cervical fusion procedure recommended by appellant's physician.  That order was not complied with, and the Commission, on October 4, 1988, ordered appellee to

---

1.  The Workers' Compensation Act is codified in Title 9 of the Md.Code (1991 Repl.Vol.) of the Lab. & Empl. Article.

2.  The appeal apparently languished until July, 1990 when the Circuit Court for Baltimore City forwarded a notice of contemplated dismissal pursuant to Md.Rule 2–507.  The appeal was not dismissed at that time presumably due to a request by appellee who eventually dismissed the case in March, 1991, which was six months after the expiration of the five year statute of limitations.

pay a counsel fee of $350.00 to appellant's counsel who initiated the October hearing. Appellant received the fusion operation in December 1988 after arranging for the costs to be paid through a medical assistance program. Appellant did not file for, and appellee did not resume, temporary total benefits following the surgery.

Appellee's appeal from the $350.00 counsel fee order generated a further hearing in the Circuit Court for Baltimore City on February 8, 1989. The trial court affirmed the Commission and ordered that Rite Aid Corporation, the employer, and Twin City Fire Insurance Company, the insurer, pay Dr. Henry Shuey for medical services rendered appellant and that they pay a $350.00 counsel fee to Bruce Ingerman, appellant's counsel.

On October 18, 1991, approximately six years after the last payment of either temporary total or permanent partial disability benefits, but only two or three years after the last payment of penalties imposed by the Commission as attorney fees and costs, appellant sought to reopen her claim. The affirmative defense of limitations was raised by appellee. The Commission held that the claim was not barred by limitations.

The limitations issue was appealed to the Circuit Court for Baltimore City by appellee. The trial judge and counsel agreed that the material facts were undisputed and each party moved for summary judgment. Following arguments of counsel, Judge Marvin Steinberg held that the payment of counsel fees under the awards of "November 17, 1987 and October 4, 1988 were not payments of compensation within the meaning of the law." Judge Steinberg concluded, therefore, that the claimant was barred by limitations from reopening her claims. This appeal followed.

### COMPENSATION

Section 9–101(e) of the Workers' Compensation statute defines compensation as follows:

(e) *Compensation.*—(1) "Compensation" means the money payable under this title to a covered employee or the dependents of a covered employee.

(2) "Compensation" includes funeral benefits payable under this title.

Fees for legal services rendered to a covered employee are controlled by § 9–731 of the statute, which provides in pertinent part:

(a) *In general.*—(1) Unless approved by the Commission, a person may not charge or collect a fee for:

(i) legal services in connection with a claim under this title;

(ii) medical services, supplies, or treatment provided under Subtitle 6, Part IX of this title; or

(iii) funeral expenses under Subtitle 6, Part XIII of this title.

(2) When the Commission approves a fee, the fee is a lien on the compensation awarded.

(3) Notwithstanding paragraph (2) of this subsection, a fee shall be paid from an award of compensation only in the manner set by the Commission.

Inextricably associated with the two sections of the law quoted above is § 9–736, which controls the reopening of workers' compensation claims. It states:

§ 9–736. Readjustment; continuing powers and jurisdiction; modification.

(a) *Readjustment of rate of compensation.*—If aggravation, diminution, or termination of disability takes place or is discovered after the rate of compensation is set or compensation is terminated, the Commission, on the application of any party in interest or on its own motion, may:

(1) readjust for future application the rate of compensation; or

(2) if appropriate, terminate the payments.

(b) *Continuing powers and jurisdiction; modification.*— (1) The Commission has continuing powers and jurisdiction over each claim under this title.

(2) Subject to paragraph (3) of this subsection, the Commission may not modify an award unless the modification is applied for within 5 years after the last compensation payment.

(c) *Estoppel; fraud.*—(1) If it is established that a party failed to file an application for modification of an award because of fraud or facts and circumstances amounting to an estoppel, the party shall apply for modification of an award within 1 year after:

(i) the date of discovery of the fraud; or

(ii) the date when the facts and circumstances amounting to an estoppel ceased to operate.

(2) Failure to file an application for modification in accordance with paragraph (1) of this subsection bars modification under this title.

In *Chanticleer Skyline Room, Inc. v. Greer,* 271 Md. 693, 319 A.2d 802 (1974), the claimant sought to reopen her compensation case in December 1971; her last award of 30% permanent partial disability had been entered by the Commission on February 23, 1966. The 1966 award was appealed, and while the appeal was pending the Commission passed an additional order on March 24, 1966, directing that the claimant's attorney be allowed a $500 counsel fee to be paid "from the closing weeks of compensation due the claimant" but not until the appeal had been decided.

For unexplained reasons, the appeal was not dismissed until March 24, 1970, and the $500 fee was paid to claimant's counsel on June 15, 1970. The Commission ruled that the request to reopen claimant's case was not filed within the applicable time limits. The Circuit Court for Baltimore City reversed, and we affirmed the trial court. *Id.* Upon further appeal, the Court of Appeals affirmed our judgment.

Judge Digges, writing for that Court, concluded that, by definition, compensation is money allowance, provided for in

the statute, payable to an insured. Thus, an attorney's fee authorized by the Commission, payable from the claimant's award, said fee being a lien upon the compensation awarded, is a payment of compensation to the claimant. In *Chanticleer, supra,* therefore, limitations did not begin running until June, 1970, when the counsel fee was paid, and claimant's petition to reopen her case in December, 1971 was timely. *Accord Holy Cross Hospital v. Nichols,* 290 Md. 149, 161, 428 A.2d 447 (1981).

Section 9–731 of the statute clearly established that counsel fees are compensation within the meaning of that particular section of the law when (1) the fees are approved by the Commission, and (2) the fees are payable from compensation awarded a claimant, at which time, (3) the fee becomes a lien on the compensation payable.

The fees awarded in the case *sub judice,* however, do not meet the requirements of § 9–731. The November 17, 1987, costs imposed by the Commission included a counsel fee of $150 payable to appellant's attorney and $125 payable to the Commission to cover the costs of the hearing. The costs were assessed to appellee for failing to pay the costs of a myelogram performed on appellant. The October 4, 1988, counsel fee of $350 was assessed by the Commission for what the Commission determined was an unreasonable failure by appellee to approve a cervical fusion operation ordered by the Commission.

Neither payment was from compensation awarded a claimant under § 9–731, and neither payment was subject to any lien. The Commission expressly set forth in each of the orders for counsel fees that it was proceeding under § 57 of Article 101 of the Md.Code, currently Md.Code (1991 Repl. Vol.), § 9–734 of the Lab. & Empl. Article. Derived without substantive change from the first sentence of former Art. 101, § 57, § 9–734 provides:

If the Commission finds that a person has brought a proceeding under this title without any reasonable ground, the

Commission shall assess against the person the whole cost of the proceeding, including reasonable attorney's fees.[3]

Judge Steinberg recognized the distinction between attorney's fees paid from an award of compensation and attorney's fees paid as a sanction or penalty for filing frivolous proceedings or willfully disregarding rulings by the Commission. He said:

But the attorney's fees in this case which were paid on which the claimant seeks to base a stay of limitations were not paid from her compensation. She would never have gotten that money. That money was in the nature of a fine or assessment against the employer and bears no relationship to diminishing in any way the amount of compensation which the claimant gets.

Thus, the principal purpose of § 9–734 is to punish the guilty party, notwithstanding that the claimant is benefited indirectly. The legislative intent to punish rather than increase compensation is also evident in § 9–728 (formerly Art. 101, § 36(13)). This provision assesses a penalty against the employer/insurer if an award of compensation is paid later than thirty days after the award. Adopted by the Legislature in 1980, the original purpose clause read:

For the purpose of requiring that a certain percentage of a workmen's compensation award be *given in addition to* the award if the award is not paid within a certain time.

The Legislature changed the clause to read:

For the purpose of providing that a certain *penalty shall be paid* to a ... claimant, etc. (emphasis added).

We think the legislative intent to distinguish penalties imposed from compensation awarded a claimant is clear.

Although the issue of penalties as compensation has not been addressed specifically, we have discussed, in *dicta,*

---

**3.** Under § 1–101(d) of the Labor and Employment Article, "person" includes an individual, receiver, trustee, guardian, personal representative, fiduciary, or representative of any kind and any partnership, firm, association, corporation, or other entity.

whether penalties assessed are compensation for the purpose of a stay of payment pending appeal under § 9–741. *General Motors Corp. v. Koscielski,* 80 Md.App. 453, 564 A.2d 114 (1989).[4]

Addressing the issue for the benefit of the trial court, Judge Alpert stated:

> The pertinent provision of Art. 101, Sec. 57 (now Lab. & Empl. sec. 9–734) is neither "compensation," an attorney's fee to be paid from that compensation ... nor medical expenses. Rather, it is a sanction to be imposed.

Not being "compensation" within the meaning of the statute, these fees could be stayed pending an appeal.

In the case *sub judice,* we hold that attorney's fees and costs of a hearing before the Workers' Compensation Commission are not compensation within the meaning of Md.Code (1991 Repl.Vol.), § 9–101 of the Lab. & Empl. Article. Penalty payments, therefore, do not toll the running of the applicable statute of limitations.

## ESTOPPEL

Appellant portrays the assertion of an affirmative defense of limitations by the appellee as being "unscrupulously, disingenuously, and in a most machiavellian fashion asserted."[5] Notwithstanding the characterization above, appellant does not allege fraud. She asserts that, under § 9–736(c)(1)(ii) of the statute, modification of her award is proper within one year after "(ii) the date when the facts and circumstances amounting to an estoppel ceased to operate." That date, appellant contends, is whatever day in March of 1991 the appellee

---

4. Section 9–741 states that an appeal is not a stay of a Commission order requiring the payment of compensation or the provision of medical treatment. The case was dismissed as being moot for reasons not relevant to the present case.

5. Niccolo Machiavelli, 1469–1527, a Florentine statesman and writer on government. Author of political principles and methods of craftiness and duplicity. (Still practiced to some degree 467 years later.)

dismissed its appeal from the Commission's May 15, 1988, order authorizing the cervical fusion operation.

Both parties agree that the last payment of compensation benefits for disability was in September 1985. The five-year statute of limitations would have expired, therefore, in September 1990. Appellant's petition to modify the nature and extent of disability was filed on October 18, 1991, which is 13 months after the statute had run.

Appellant avers that she was precluded from reopening her case from June 1988 until March 1991 because of the appeal by appellee, which, she alleges, prevented her from raising any disability issues. The Commission, she asserts, lacked jurisdiction to hear any new disability claims while the appeal was pending. A claim filed under these circumstances, therefore, according to appellant, would have been summarily dismissed. We find this reasoning to be flawed.

Section 9–736(b)(3), the limitations statute, provides that the Commission may not modify an award "unless the modification is *applied for* within 5 years after the last compensation payment." (Emphasis supplied). The statute does not say that the Commission must decide the case within five years, or that a hearing must be held within that time. Appellant could have requested a hearing to avoid the statutory bar. Rather than dismiss her filing, we think it more reasonable to assume that the Commission would have held the matter in abeyance pending resolution of the appeal. Although § 9–742 provides that the Commission retains jurisdiction pending an appeal to hear requests for additional medical treatment, it does not provide that any other issues raised pending an appeal shall be dismissed.

■ Additionally, appellant castigates appellee for not resuming her disability payments *sua sponte* after she had undergone the cervical fusion and was totally disabled. Her condition, she adds, was well known to appellee. Clearly, appellant would have been eligible for temporary total benefits had she applied during the year and a half between her surgery and the running of the statute of limitations. Assum-

ing without deciding that the Commission would not have acted while the appeal was pending, the temporary total benefits would have been payable when the appeal was concluded. The ball was in appellant's court; she held it until after the final whistle and cannot now complain that her opponent did not do for her that which she could and should have done on her own behalf. The trial court concluded that the undisputed facts did not warrant the application of the doctrine of equitable estoppel. We agree.

The Court of Appeals in *Bayshore Indus., Inc. v. Ziats,* 232 Md. 167, 192 A.2d 487 (1963), addressed estoppel as follows:

> Whether the doctrine of equitable estoppel should or should not be applied depends upon the facts and circumstances of each particular case, and unless the party against whom the doctrine has been invoked has been guilty of some unconscientious, inequitable, or fraudulent act of commission or omission, upon which another has relied and has been misled to his injury, the doctrine will not be applied. The clear meaning is that if the converse situation exists, the doctrine may be applied.[6]

The doctrine was invoked in *Bayshore* because the employer threatened that the employee would never work in the area again if she filed a claim. In *Webb v. Johnson,* 195 Md. 587, 74 A.2d 7 (1950), equitable estoppel was applied where the employer lulled the employee into a false sense of security by promising that he would be taken care of by a settlement. Conversely, the doctrine was not applied in *Beall, supra,* where counsel wrote to the insurer requesting a resumption of total disability payments for his client. The letter was written approximately six weeks before limitations expired, but the insurer did not respond until shortly after the five-year period expired. Meanwhile, a claim was filed with the Commission five days after the critical date. We denied the claim. Judge Cathell emphasized that equitable estoppel, by conduct or

---

**6.** *See Mayor of Cumberland v. Beall,* 97 Md.App. 597, 631 A.2d 506 (1993) (Cathell, J.), including a comprehensive review of cases involving the application of equitable estoppel.

silence, involves situations much more egregious than the facts in *Beall.*

In the present case, appellee did not induce appellant to refrain from filing issues with the Commission, or engage in any fraudulent conduct, or represent that it would refrain from asserting the defense of limitations. Nothing that appellee did generated any reliance thereon by appellant to her detriment. What appellee did do was file several appeals from Commission orders and cause the Commission to hold several hearings because of appellee's unwarranted refusal to provide certain medical services authorized by the Commission. For these delays and refusals, appropriate penalties were imposed by the Commission. None of these transgressions, however, precluded appellant from filing issues with the Commission that could have tolled the five year limitation statute.

Appellant would have us conclude that the Workers' Compensation Act should be construed as broadly as possible in favor of the claimant in order that its beneficial effect upon injured workers may be achieved. *Bayshore, supra.* That general principle, however, is inapplicable to limitations issues.

The general purpose of the applicable workmen's compensation act to compensate injured workers should not be used to interpret the limitations provision, because the very existence of a limitations provision in the act indicates that the legislature has deliberately compromised the general compensation purpose in the interests of the purposes served by the limitations provision.

*Montgomery County v. McDonald,* 317 Md. 466, 472, 564 A.2d 797 (1989) (quoting Kelly, *Statutes of Limitations in the Era of Compensation Systems: Workmen's Compensation Limitations Provisions for Accidental Injury Claims,* 1974 Wash. U.L.Q. 541, 603).

The statute required that a claim be filed within five years of the last payment of compensation. No claim was filed within that period. The claim is barred.

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLANT.