*In the Matter of Mark Zukowski*, et al., No. 1121, September Term, 2022, and No. 796, September Term 2023. Opinion by Tang, J.

**WORKERS' COMPENSATION – PROCEEDINGS TO SECURE COMPENSATION – COSTS AND ATTORNEY FEES – ATTORNEY FEES**

The Workers' Compensation Commission properly calculated attorney's fees from the amount due to the claimants for compensation awards for permanent partial disability after applying the statutory offsets, rather than from the initial awards of compensation before applying the offsets. Maryland Code (1991, 2016 Repl. Vol.), Labor and Employment Article ("LE") §§ 9-610 and 9-731; Code of Maryland Regulations ("COMAR") 14.09.04.03(B)(3).

Circuit Court for Anne Arundel County
Case No. C-02-CV-21-000697
Case No. C-02-CV-21-001642

REPORTED

IN THE APPELLATE COURT

OF MARYLAND

No. 1121
September Term, 2022

&

No. 796
September Term, 2023

_____

IN THE MATTER OF MARK ZUKOWSKI,
ET AL.

_____

Graeff,
Nazarian,
Tang,

JJ.

_____

Opinion by Tang, J.

_____

Filed: January 31, 2024

Pursuant to the Maryland Uniform Electronic Legal
Materials Act (§§ 10-1601 et seq. of the State
Government Article) this document is authentic.



Gregory Hilton, Clerk

This appeal is about attorney's fees in a workers' compensation case. The appellants, Mark Zukowski and Joshua Ruggiero, received service-connected disability retirement benefits from their employer due to work-related injuries. These benefits offset part of their workers' compensation benefits awarded by the Maryland Workers' Compensation Commission. In each case, their counsel sought attorney's fees calculated from the compensation award *before* applying the offset. But the Commission calculated and awarded the attorney's fees from the compensation award *after* applying the offset. This resulted in a lower amount of attorney's fees than if they had been calculated from the compensation award before the offset was applied.

In a consolidated action for judicial review, the Circuit Court for Anne Arundel County affirmed the Commission's decisions, and the appellants appealed. The central issue is whether the Commission erred in declining to award attorney's fees based on the compensation award before applying the statutory offset. Before discussing the merits of this issue, we address a threshold issue not raised by the parties: whether the notice of appeal by Mr. Zukowski was also effective to note an appeal by Mr. Ruggerio. We conclude that it was. On the merits, we hold that the Commission did not err, and we affirm the circuit court's judgments.

## FACTUAL AND PROCEDURAL BACKGROUND

The events that led to this appeal are not in dispute. The appellants were officers for the Anne Arundel County Police Department. They sustained injuries while on duty and hired the same attorney to represent them in their workers' compensation claims. The appellants applied for and were granted service-connected disability retirement by their

employer, Anne Arundel County, based on their work-related injuries. The Commission granted the appellants awards of permanent partial disability and ordered an allowance for attorney's fees, as detailed below.

## Mark Zukowski

Mr. Zukowski had an accidental injury on July 3, 2018. Before leaving his employer, he was paid full wages in lieu of temporary total disability benefits from July 20, 2018, to October 17, 2018, and from November 29, 2018, to February 16, 2019. He resumed full-time work on February 17, 2019, but in a light-duty capacity until September 30, 2019. He was then granted service-connected disability retirement that went into effect on October 1, 2019.

In an order dated April 22, 2021, the Commission found a 44% permanent, partial disability to the right knee and a 22% permanent, partial disability due to psychological conditions. The compensation award amounted to 200 weeks, payable at $365 per week beginning February 17, 2019, for a total award of $73,000. The Commission further determined that the County was entitled to a statutory offset of benefits of $1,195.15 per week beginning October 1, 2019. This weekly amount exceeded the weekly rate of $365 awarded by the Commission. Therefore, Mr. Zukowski was only entitled to receive compensation benefits for the gap period between February 17, 2019, and September 30, 2019. This resulted in a reduced total award of about $11,700.

At the Commission hearing, Mr. Zukowski argued that the attorney's fee should be calculated from the initial compensation award, which totaled $73,000 before applying the offset, instead of the award after applying the offset. He interpreted the statutory offset to

only apply to the benefits for the claimant and not to the allowance of compensation for payment of the attorney's fee.

The Commission examined the practical implications of Mr. Zukowski's statutory interpretation, specifically, who would pay the attorney's fee. The Commission considered a hypothetical scenario where Mr. Zukowski's award for a 34-week gap period would be $12,410 ($365 x 34 weeks). According to the fee schedule, the maximum allowable attorney's fee would be 20% of this award, which amounts to $2,482. However, if the attorney's fee is calculated from the initial compensation award of $73,000, it would be over $10,000. The Commission asked whether the County should pay the fee in addition to Mr. Zukowski's award of $12,410.

In this scenario, Mr. Zukowski said the County should pay the attorney's fee. The Commission should enter the attorney's fee award against the County, just as it would the permanency award. This approach would ensure that the claimant does not receive double recovery for the same work-related injury. It would also ensure that his counsel is adequately compensated for the time spent prosecuting the claim.

The County disagreed with that approach and directed the Commission to the statutory scheme for awarding attorney's fees in workers' compensation cases. The County explained that the attorney's fee is a lien against the compensation due to the claimant, and it is the claimant's responsibility to pay it. There can only be a single award of compensation that the County is responsible for, and the attorney's fee is paid from that compensation. There cannot be a separate award to pay the attorney's fee.

3

The Commission determined that "the fee awarded is limited to 15%[1] of the benefits actually payable to [Mr. Zukowski] after the offset is applied, not on what would have been payable under the attorney fee guideline had no offset been applied." Thus, from Mr. Zukowski's award, counsel was entitled to a fee of about $1,700.

## Joshua Ruggiero

On November 16, 2018, Mr. Ruggiero was injured while working. Before leaving his employer, he received full wages instead of temporary total disability benefits from November 24, 2018, to July 10, 2019. He then returned to full-time work in a light-duty capacity from July 11, 2019, to March 31, 2020. He was then granted service-connected disability retirement that went into effect on April 1, 2020.

In an order dated November 1, 2021, the Commission found a 75% permanent, partial disability due to injuries to his head, face, nose, cervical spine, and left shoulder, as well as psychological injuries. The compensation award amounted to 500 weeks, payable at $821 per week beginning July 11, 2019, for a total award of $410,500. The Commission further determined that the employer was entitled to an offset of benefits of $1,191.73 per week beginning April 1, 2020. This weekly rate surpassed the weekly rate of $821 awarded by the Commission. As a result, Mr. Ruggiero was only entitled to receive compensation benefits for the gap period between July 11, 2019, and March 31, 2020, which reduced the total award to $30,787.50.

---

[1] Mr. Zukowski's retainer agreement with counsel limited the fee to 15%, less than the attorney's fee schedule allows.

As for the attorney's fee, Mr. Ruggiero reiterated the arguments made in Mr. Zukowski's case. However, the Commission awarded an attorney's fee of $6,157.50, calculated from the compensation award after applying the offset.

**Circuit Court Review**

The appellants filed separate petitions for judicial review in the circuit court, and a different attorney represented them. Since both cases involved the same issue, they were consolidated, with Mr. Zukowski's case as the lead case.[2] The court identified the main issue as "whether a claim for attorney's fees attaches *before* or *after* the offset of benefits." During the consolidated hearing, the appellants asked the court to reverse the Commission's decisions on attorney's fees and calculate them from the initial compensation awards before the offsets were applied.

On August 23, 2022, the court issued a memorandum opinion and order affirming the Commission's decision. The court concluded that the attorney's fee is to be taken after offsetting the compensation benefits, not before.

Despite the consolidation and identical issue, the court's opinion and order only addressed Mr. Zukowski's case and did not mention Mr. Ruggiero's.

**Notices of Appeal Filed by Mr. Zukowski**

On September 1, 2022, Mr. Zukowski noted his appeal, docketed with this Court under case number CSA-REG-1121-2022. The parties briefed their arguments and presented them at oral argument as if Mr. Ruggiero's case was also before the Court.

---

[2] Mr. Ruggiero's case (Case No. C-02-CV-21-001642) was consolidated with Mr. Zukowski's (Case No. C-02-CV-21-000697).

During oral argument, the Court raised concerns about the finality of judgment in Mr. Ruggiero's case. Their counsel acknowledged the concern but argued that both cases involved the same legal issue.

After oral argument, the Court issued an order remanding the case to the circuit court without affirmance or reversal. The circuit court was instructed to enter a separate written judgment as to Mr. Ruggiero. On June 20, 2023, the circuit court issued an order disposing of the consolidated action, this time including the names and case numbers of Mr. Zukowski and Mr. Ruggiero in the caption of the order.

The next day, counsel for Mr. Zukowski and Mr. Ruggiero filed a notice of appeal. The caption of the notice included the names of both parties along with their circuit court case numbers. But the body of the notice only indicated that Mr. Zukowski was appealing. The notice read:

> Claimant, *Mark Zukowski*, by and through his attorneys . . . hereby gives notice of an appeal to the Appellate Court of Maryland from the Order of Compliance . . . docketed and entered by the Circuit Court on June 20, 2023.
>
> WHEREFORE, *Mark Zukowski*, Claimant, respectfully gives notice of this appeal to the Appellate Court of Maryland[.]

(Emphasis added.) Counsel signed the notice of appeal on behalf of "Claimant/Appellant."

This notice of appeal was docketed with the Court, and a new case number, ACM-REG-796-2023, was assigned. All parties treated Mr. Zukowski's second notice of appeal to apply to Mr. Ruggiero as well when they jointly moved to consolidate the appeals in "Zuko[w]ski v. Anne Arundel County and Ruggiero v. Anne Arundel County." They agreed there was no need for re-briefing or another oral argument since the issue had

already been briefed and argued. We granted the joint motion for consolidation without another briefing or oral argument.

Before addressing the merits of the case, we determine the threshold question of whether Mr. Zukowski's second notice of appeal was adequate to note an appeal for Mr. Ruggiero. *See Tharp v. Disabled Am. Veterans Dep't of Md., Inc.*, 121 Md. App. 548, 557 (1998) (the failure of either party to the appeal to raise the appealability issue does not impede our raising it on our own accord).

The Maryland Rules do not regulate the content of the notice of appeal to this Court, and we construe timely notices of appeal liberally. *Newman v. Reilly*, 314 Md. 364, 386 (1988); *see* Md. Rule 8-201(a). Our Supreme Court noted the "liberal" philosophy of construing notices of appeal, reasoning that it did not want to let the right of appeal to get lost due to "mistakes of mere form." *See Newman*, 314 Md. at 386–87; *Candolfi v. Allterra Grp., LLC*, 254 Md. App. 221, 243 (2022).

In *Joppa Sand & Gravel Corp. v. L. Epstein & Sons, Inc.*, 39 Md. App. 34 (1978), a judgment was entered against five defendants. *Id.* at 43. But the notice of appeal from the judgment described it as "adverse to the Defendant, [naming one]." *Id.* We held that the quoted phrase was surplusage and could not be construed to limit the notice of appeal to the named defendant alone. *Id.* We reasoned that the appeal was clearly noted with respect to the judgment, which applied to all the defendants, and counsel signed it in his capacity as attorney for all of them. *Id.*

In *Newman v. Reilly*, 314 Md. 364 (1988), the circuit court entered a money judgment for sanctions against counsel and his client, the plaintiff. *Id.* at 375–76. Counsel

7

filed a notice of appeal on behalf of his client, signing it as "Attorney for Plaintiff." *Id.* at 376. Our Supreme Court held that the notice of appeal filed for the client and signed by counsel was also effective to note an appeal for counsel. *Id.* at 386.

The Court explained that there was no substantial reason to indicate that counsel had waived his right of appeal or that using the singular to identify the client and the judgment was a deliberate limitation. *Id.* at 388. When counsel and his client share the same interest, and the imprecision in the notice of appeal does not prejudice the opponent, a timely notice of appeal brings up for review both the judgment against counsel and the judgment against his client. *Id.*; *see also Anderson v. Stewart*, 108 Md. 340, 346–48 (1908) (an order of appeal signed by counsel as "Attorneys for [P]laintiff," when, in fact, there were four plaintiffs, was a "mere clerical misprision in the pleader" and "should be treated as taken for all the parties[.]").

Likewise, in this case, there is no substantial reason to indicate that Mr. Ruggiero waived his right to appeal or that referring only to Mr. Zukowski in the second notice of appeal, which was filed in a consolidated action where the same attorney represented both petitioners and the court resolved an identical issue, was done to limit the appeal to Mr. Zukowski only. Moreover, the County is not prejudiced by the imprecision or inadvertent mistake in the second notice of appeal as it had treated both notices to include Mr. Ruggiero in its submissions to the Court. While the better practice is to identify the party or parties appealing in the notice of appeal, we conclude that the second notice of appeal filed by Mr. Zukowski was enough to constitute an appeal by Mr. Ruggiero based on the circumstances. We will now address the merits of the issue raised on appeal.

8

**STANDARD OF REVIEW**

"In reviewing administrative decisions, we bypass the judgment of the circuit court and look directly at the administrative decision." *Kim v. Md. State Bd. of Physicians*, 196 Md. App. 362, 370 (2010). Although generally "the decision of the Commission is presumed to be prima facie correct, this presumption does not extend to questions of law, which we review independently." *Hollingsworth v. Severstal Sparrows Point, LLC*, 448 Md. 648, 654–55 (2016) (cleaned up and citations omitted). "[W]e must respect the expertise of the agency and accord deference to the Commission's own interpretation of the statute it administers." *Id.* at 654. We may reverse a Commission's decision only if we find "that the Commission's action was based on an erroneous construction of the facts or law." *Id.* (citation omitted). This appeal involves a matter of law—specifically, applying the statutory schemes for attorney's fees and offsets in workers' compensation cases.

**STATUTORY SCHEME FOR ATTORNEY'S FEES**
**LE § 9-731 (formerly codified as Art. 101, § 57)**

We begin by summarizing the objectives the legislature sought to achieve through the statutory scheme for awarding attorney's fees in workers' compensation cases:

> [T]he worker's compensation statutory scheme was designed to protect workers and their families from hardships inflicted by work-related injuries. More particularly, it is designed to provide workers with compensation for loss of earning capacity resulting from accidental injury, disease or death arising out of and in the course of employment, to provide vocational rehabilitation, and to provide adequate medical services.
>
> In light of that goal, the legislature sought to regulate attorney's fees, noting that the party seeking compensation—the claimant—is responsible for [their] own attorney's fees. Because worker's compensation law is designed to provide financial assistance to the injured worker in lieu of lost wages, the legislature recognized that the purpose of the law would be subverted if a

9

worker's recovery, which did not include any padding to take care of legal and other expenses incurred in obtaining the award, were dissipated as a result of excessive fees incurred in recovering the compensation. Consequently, the legislature authorized the Commission to adopt appropriate safeguards, thereby giving the Commission the power to regulate when and how much remuneration an attorney who represents a claimant is to receive from the employee for legal services rendered to him.

The Court also recognized that, although claimants must be protected from exorbitant legal fees, there also exists a need to ensure that workers are able to obtain competent counsel to pursue their claims. Therefore, although fees should not be so large as to be excessive[,] they also should not be so low as to make representing claimants undesirable to the legal practitioner. To balance the need to protect claimants from excessive legal fees against the need of workers to retain competent counsel, the legislature delegated to the Commission, an administrative agency with special expertise in worker's compensation law, the authority over attorney's fees in worker's compensation cases, including the power to promulgate rules governing such fees.

*Brunson v. Univ. of Md. Med. Sys. Corp.*, 221 Md. App. 583, 591–93 (2015) (cleaned up).

The authorities providing for the award of attorney's fees are found in the Maryland Code (1991, 2016 Repl. Vol.), Labor and Employment Article ("LE") § 9-731 of the Workers' Compensation Act,[3] and the Code of Maryland Regulations ("COMAR").[4] A person may not charge or collect a fee for legal services in connection with a workers' compensation claim unless the Commission approves it. LE § 9-731(a)(1)(i). The

---

[3] The attorney's fee provisions under LE § 9-731 were initially enacted in 1957 as § 57 of Article 101. *Engel & Engel, P.A. v. Ingerman*, 353 Md. 43, 49 (1999). In 1991, the provisions were recodified as LE § 9-731 without any substantive changes relevant to the provisions cited here. *Id.*

[4] We will refer to the COMAR provisions that were in effect at the time of the underlying Commission proceedings. We note that in 2023, the Commission adopted changes to the fee schedule. *See* n.9, *infra*.

Commission may approve the attorney's fee per the schedule of fees when a "final award of compensation"[5] has been made for permanent partial disability. *See* COMAR 14.09.04.03(B)(3).

The schedule of fees, in effect at the time of the Commission hearings, provided that "the Commission may approve an attorney's fee in a total amount not exceeding 20 times the State average weekly wage and computed as follows:"

> (i) Up to 20 percent of the *amount due for* the first 75 weeks of *an award of compensation* awarded; (ii) Up to 15 percent of the *amount due for* the next 120 weeks of *an award of compensation*; and (iii) Up to 10 percent of the *amount due for an award of compensation* in excess of 195 weeks.

COMAR 14.09.04.03(B)(3)(a) (emphasis added). The fee schedule "does not represent an *entitlement* to a specific amount of attorney's fees, but merely establishes the *maximum* fee that will be permitted." *Workers' Comp. Comm'n v. May*, 88 Md. App. 408, 417 (1991).

Under LE § 9-731, the claimant is responsible for the attorney's fee generated in pursuing his claim. *Engel & Engel, P.A. v. Ingerman*, 353 Md. 43, 50 (1999); *Feissner v. Prince George's Cnty.*, 282 Md. 413, 419 (1978) ("Liability for payment of counsel fees continues to rest with the employee."). "To secure payment of a reasonable fee to the attorney . . . and to minimize intrusion into the otherwise private relationship between attorney and client, the statute imposes a lien upon the compensation award for the amount of the fee." *Feissner*, 282 Md. at 418; LE § 9-731(a)(2) ("When the Commission approves a fee, the fee is a lien on the compensation awarded.").

---

[5] A "final award" means "the award of compensation determined by the Commission after exhaustion of all applicable appeals, regardless of whether the award is increased or decreased as a result of any appeal." COMAR 14.09.04.03(B)(1)(b)(i).

11

"Notwithstanding" such a lien, "a fee shall be paid *from an award of compensation* only in the manner set by the Commission."[6] LE § 9-731(a)(3) (emphasis added). This means that "the lien attaches when the fee is approved by the Commission, but the money to be paid the attorney remains part of the fund to which the employee is entitled as compensation." *Feissner*, 282 Md. at 419. "Since the employer remains obligated to pay the compensation award from which the fee is to be paid, [it] may, in part, fulfill [its] responsibility to the claimant by paying the employee's debt to the attorney." *Id.*

An essential aspect of the statutory scheme is that the attorney's fee award is not an "add-on" or "double" benefit that the employer or insurer must pay injured workers in addition to the compensation award. *Id.* at 418. Instead, a single compensation award is made for the employee's benefit, and the statute merely gives an attorney a lien on this compensation award to the extent of the fee as approved by the Commission. *Chanticleer Skyline Room, Inc. v. Greer*, 271 Md. 693, 700 (1974); *Feissner*, 282 Md. at 419 ("The statutory lien merely alters the manner in which the employer discharges [its] liability for the compensation award.").

---

[6] "Compensation" is "money payable under this title to a covered employee or the dependents of a covered employee." LE § 9-101(e)(1). We have said that LE § 9-731 "clearly established that counsel fees are compensation within the meaning of that particular section of the law when (1) the fees are approved by the Commission, and (2) the fees are payable from compensation awarded a claimant, at which time, (3) the fee becomes a lien on the compensation payable." *Stevens v. Rite-Aid Corp.*, 102 Md. App. 636, 642 (1994).

12

**STATUTORY SCHEME FOR OFFSETS**
**LE § 9-610 (formerly codified as Art. 101, § 33)**

Under the Act, the legislature sought to provide only a single recovery for a single injury for government employees and "preclude double-dipping into the same pot of comparable benefits." *Spevak v. Montgomery Cnty.*, 480 Md. 562, 576 (2022) (citation and emphasis omitted). Under LE § 9-610's offset provision, if a State or municipal employer furnishes benefits to the employee, those benefits can be used to satisfy a compensation award:

> (a)(1) Except for benefits subject to an offset under § 29-118 of the State Personnel and Pensions Article, if a statute, charter, ordinance, resolution, regulation, or policy, regardless of whether part of a pension system, provides a benefit to a covered employee of a governmental unit or a quasi-public corporation that is subject to this title under § 9-201(2) of this title or, in case of death, to the dependents of the covered employee, payment of the benefit by the employer satisfies, to the extent of the payment, the liability of the employer and the Subsequent Injury Fund for payment of similar benefits under this title[.]

LE § 9-610(a)(1).[7]

For instance, a State or municipal employer is entitled to an offset against an award for compensation if the injured employee receives service-connected disability benefits from the employer for the work-related injury. *See, e.g.*, *Nooe v. City of Baltimore*, 28 Md. App. 348, 352 (1975) (holding that payment to the employee of service-connected disability pension satisfied the obligation of the employer for permanent partial disability benefits); *Spevak*, 480 Md. at 579–80 (holding that the firefighter's service-connected total

---

[7] "Article 101, § 33, enacted in 1971, was the predecessor to LE § 9-610, and contained substantially the same offset provision." *Spevak v. Montgomery Cnty.*, 251 Md. App. 674, 683 n.4 (2021).

disability benefits were similar to his permanent partial disability workers' compensation benefits, and the compensation benefits were offset under LE § 9-610).

If the benefits paid by the employer are less than the compensation benefit, the employer (or the Subsequent Injury Fund, or both) is liable to furnish the additional benefit to make up the difference as determined by the Commission. LE § 9-610(a)(2); *see Nooe*, 28 Md. App. at 351; *Blevins v. Baltimore Cnty*., 352 Md. 620, 622–23 (1999). But if the benefit paid by the employer equals or exceeds the workers' compensation benefit, the setoff is complete, and the employer's obligation to pay the workers' compensation benefit is fully discharged. *Nooe*, 28 Md. App. at 356; *Blevins*, 352 Md. at 622.

## DISCUSSION

The appellants agree that the County was entitled to offsets against the compensation awards due to their service-connected disability retirement benefits; they were only entitled to receive compensation benefits for the gap periods. But they argue that the Commission erred in calculating the attorney's fees from the compensation award *after* applying the statutory offset, rather than *before*. If the initial compensation award had been used to calculate fees, the amounts would have been much higher. Per their calculations, the fee for Mr. Zukowski's case would have been $10,950 instead of about $1,700, and for Mr. Ruggiero's case, it would have been $21,600 instead of $6,157.50. To resolve this issue, we must examine the interplay between the two statutory schemes previously explored by our appellate courts.

In *Feissner v. Prince George's County*, 282 Md. 413 (1978), the Supreme Court of Maryland addressed whether an attorney for a claimant in a workers' compensation case

14

may collect attorney's fees from the claimant's employer even though superior benefits from a pension fund had offset the entire compensation award. *Id.* at 414. There, an attorney served as counsel for the claimants in two unrelated workers' compensation cases. *Id.* at 415. In both cases, the Commission found the claimants permanently and totally disabled and ordered the payment of compensation. *Id.* The Commission awarded attorney's fees in both cases. *Id.* But the employer later invoked the offset provision under Article 101, § 33, the predecessor to LE § 9-610. *Id.* Applying the offset provision, the Commission found in each case that the benefits provided by the employer as disability retirement were at least equal to those available under the workers' compensation laws. *Id.* at 416. Thus, the retirement benefits offset the compensation award in each case. *Id.* Regarding fees, the Commission ruled that the attorney's right to collect fees was abrogated in one case by the total offset of the compensation award. *Id.* But, in the other case, it allowed the collection of the fees. *Id.*

On appeal, the Court examined the plain and unambiguous language of the offset and attorney's fee statutes. It concluded that the term "benefits" in the offset statute encompassed compensation benefits awarded by the Commission. *Id.* at 421. Therefore, it determined that the superior benefits furnished by the employer offset the compensation benefits:

> [T]he Commission found in this case without any dissent from [the attorney] that the pension disability benefits provided by the County were even more favorable than the maximum award rendered in the work[ers'] compensation case. In such instances, [§] 33 [predecessor to LE § 9-610] mandates that the pension disability benefits "shall satisfy and discharge" in full "the liability or obligation of the employer for *any* benefit under this article," meaning "any benefit" payable under the work[ers'] compensation laws of this state.

15

(emphasis added). Thus, the effect of [§] 33 is to prevent the rendition of a compensation award altogether, whenever state or municipal disability benefits exceed those available under Article 101.

*Id.*

The Court explained that the initial determination of compensation benefits before applying the offset is not the award from which a lien for attorney's fees could be satisfied:

> While the Commission, pursuant to the dictates of the offset statute, must initially make a determination as to the amount and nature of work[ers'] compensation benefits to which a claimant would be entitled in the absence of collateral pension payments, this evaluation does not in and of itself constitute an award of compensation within the contemplation of [§] 57 [predecessor to LE § 9-731] and out of which a lien for counsel fees could be satisfied.

*Id.*

Viewing the offset and attorney's fee statutes together, the Court held that "because the offset provision operates to satisfy and discharge in full the work[ers'] compensation liability of the employer, there comes into existence no fund on which the attorney's lien . . . can attach or from which payment of legal fees can be compelled. The consequence is that the employer is discharged of any possible liability under the work[ers'] compensation laws for those legal services." *Id.*

In *Brunson v. University of Maryland Medical System Corp.*, 221 Md. App. 583 (2015), we revisited the interplay between the two statutory schemes. The case addressed the right to attorney's fees in a situation where (1) the initial compensation award was rescinded, and (2) a subsequent award did not result in a compensation award to the claimant due to an offset by a credit for payment of the invalidated initial award. *Id.* at 585. In *Brunson*, the Commission ordered two compensation awards totaling $30,554.74 to the

16

claimant. *Id.* at 586–87. From the compensation awarded, the attorney was entitled to a total of $1,598.40 in fees. *Id.* at 587.

The employer appealed, and the claims were tried before a jury in the circuit court. *Id*. Pending the appeal, the employer paid the compensation awards first ordered ($30,554.74). *Id.* The jury partially reversed the Commission's decisions. *Id.* This resulted in the circuit court ordering that the Commission's decisions "be rescinded and annulled" and the case be remanded to the Commission for new orders consistent with the jury's verdict. *Id.*

Based on the jury's verdict, the Commission ordered a permanent partial disability compensation award of $7,100. *Id.* at 588–89. It granted the employer credit for payment of $30,554.74, which offset entirely the employer's obligation. *Id.* As to attorney's fees, the attorney argued that he was still entitled to $1,598.40 because the lien for fees survived, even though the prior orders were rescinded. *Id.* at 588. The Commission denied the request for attorney's fees. *Id.* at 589. Because the orders were rescinded and annulled, there was no compensation award on which the lien could attach and from which to pay attorney's fees. *Id.* at 589, 595.

On his petition for judicial review, the attorney asked the circuit court to remand the case to the Commission to enforce the payment of $1,598.40 in attorney's fees and determine whether attorney's fees should be awarded on the permanency award of $7,100. *Id.* at 589. But the circuit court affirmed the Commission's decision. *Id.* at 590.

On appeal, we affirmed, holding that the Commission properly declined to enforce the $1,598.40 award for attorney's fees. *Id.* at 598. We drew from the reasoning in *Feissner*,

explaining that "[a]ttorney's fees are permitted only upon an award payable pursuant to the workers' compensation statutory scheme." *Id.* at 597. Because the initial award of compensation was rescinded and annulled, there was no final award of compensation and, therefore, no award to which the attorney's lien could attach. *Id.*

We looked at the language in COMAR regarding the attorney's request for fees for the permanency award of $7,100. *Id.* at 601. When a final award of compensation is made for permanent partial disability, the Commission may approve an attorney's fee, up to the specified amounts, for the "amount due" under an "award of compensation." *Id.* (quoting COMAR 14.09.04.03). We again relied on the reasoning in *Feissner* to conclude there was no actual "amount due" to the claimant, given the offset for the overpayment made under the initial award. *Id.* Accordingly, "where there was no actual amount due, given an offset due to another payment, there was no fund to which the attorney's fee could attach." *Id.* (citing *Feissner*, 282 Md. at 421).

Neither the parties nor we could find a case that deals with the circumstances at hand. But the statutory schemes and analyses in *Feissner* and *Brunson* lead us to conclude that the attorney's fee is calculated from the actual amount due to the claimant of the compensation award given the offset. As *Feissner* stated, the Commission's initial compensation award before applying the statutory offset "does not in and of itself constitute an award of compensation . . . out of which a lien for counsel fees could be satisfied." 282 Md. at 421. The Commission may approve the attorney's fee up to specified amounts for "the amount due" for an "award of compensation." COMAR 14.09.04.03(B)(3)(a). This means that the attorney's fee is permitted upon an "award payable" or "actual amount due"

18

to the claimant given an offset. *Brunson*, 221 Md. App. at 597, 601. After applying the offsets, the actual amount due to Mr. Zukowski was about $11,700; for Mr. Ruggiero, it was $30,787.50. Thus, these actual amounts due are the funds "on which the attorney's lien[s] . . . can attach or from which payment of legal fees can be compelled." *Feissner*, 282 Md. at 421.

The appellants argue that the offset provision under LE § 9-610 was only intended to apply to the compensation benefits awarded to a claimant and not the allowance of compensation for the attorney's fee. They emphasize that under LE § 9-731, the attorney's fee must be paid from an award of "compensation." *See* n.6, *supra* ("compensation" defined). On the other hand, LE § 9-610 provides for offsetting "benefits" to the claimant. Since the term "compensation" is used in the attorney's fee statute and not in the offset statute, the appellants assert that the legislature intended the offset statute to apply to the compensation benefits the claimant receives, not the compensation allowed for the attorney's fee. According to them, if the legislature had intended for the offset statute to impact the amount of attorney's fees, it would have used the term "compensation" instead of "benefit" in LE § 9-610.

The appellants' argument based on the statutory language disregards the interplay of the statutory schemes and the cases interpreting it. Their interpretation, if applied, would mean that the Commission would determine the initial compensation award and the attorney's fee calculated from it. After that, the service-connected disability benefits would offset the initial compensation award. This would reduce or eliminate the claimant's compensation award without affecting the attorney's fee award. Since the claimant is

19

responsible for paying the attorney's fee from the compensation award, the amount of the attorney's fee award, such as the one in Mr. Zukowski's case, which would have been $10,910 if calculated from the initial compensation before applying the offset, would deplete the actual amount due to Mr. Zukowski of about $11,700.

The appellants have not addressed the unintended consequence of their interpretation. Instead, they continue to suggest that the County pay the attorney's fees. But this suggestion contradicts the established principle that an award of attorney's fees is not an "add-on" or "double" benefit that the employer or insurer must pay injured workers on top of the compensation award itself. *See Feissner*, 282 Md. at 418; *see Chanticleer*, 271 Md. at 700 (the clear and unambiguous language of § 57, the predecessor to LE § 9-571, does not mandate that there be two awards payable by the employer/insurer—one to the attorney, and another to the employee).

The appellants' argument regarding the statutory language relies more on policy considerations than on traditional principles of statutory construction.[8] They claim that

---

[8] In their principal brief, the appellants do not argue that the words used in the statutes are ambiguous. But in their reply brief, they assert for the first time that the undefined term "benefit" used in LE § 9-610 is ambiguous. Since they did not raise the argument in their initial brief, they may not raise it for the first time in their reply brief. *Campbell v. Lake Hallowell Homeowners Ass'n*, 157 Md. App. 504, 535 (2004); *Strauss v. Strauss,* 101 Md. App. 490, 509, n.4 (1994) ("A reply brief cannot be used as a tool to inject new arguments."). We, therefore, decline to address the issue.

Regardless, the argument is not truly about the ambiguity of "benefit." There is no disagreement over the dictionary definition of the word, and the absence of a definition in the Act does not make the term ambiguous. *See Averett v. U.S. Dep't of Health and Human Servs.*, 943 F.3d 313, 315 (6th Cir. 2019) ("A statute's terms are not ambiguous simply because the statute itself does not define them."). Instead, the appellants' argument on ambiguity is a reiteration of policy-based arguments presented in the initial brief.

their interpretation of the provisions guarantees that a claimant will have access to a lawyer, who will be paid for their time and services. It also eliminates the ethical dilemma lawyers face when advising claimants to accept superior benefits from employers, knowing that an offset against the compensation award might reduce or extinguish the attorney's fee. The appellants assert that their interpretation also ensures that a claimant does not receive a double recovery for the same work-related injury.

On the other hand, the Commission's interpretation would negatively affect the legal representation that claimants would receive in workers' compensation cases. According to the appellants, navigating workers' compensation law without a lawyer is nearly impossible. The attorney's fee calculated from compensation benefits awarded *after* applying the offset would effectively "cancel" a lawyer's right to be paid for their services. This would discourage lawyers from representing claimants in workers' compensation cases and essentially eliminate the right to counsel.

Our holding that the calculation of the attorney's fee is based on the actual amount due after applying the statutory offset adheres to the language of the attorney's fee and offset statutes and decisions by our appellate courts that have examined the interplay of these statutory schemes.[9] In *Feissner*, our Supreme Court recognized that applying the

---

[9] Our holding also aligns with the recent changes made to the regulations for attorney's fees. In March 2023, the Commission adopted amendments to COMAR 14.09.04.03 that changed the schedule of attorney's fees in permanent partial disability cases. The term "amount due for . . . an award of compensation" was replaced with "total award of compensation." The provision now reads in pertinent part:

> [T]he Commission may approve an attorney's fee in a total amount not to exceed 60 times the State average weekly wage and computed as follows: (i)

statutory offset, which may lead to no attorney's fee award, may "impair the ability of public employees to obtain legal representation in prosecuting their claims for benefits under the work[ers'] compensation law." 282 Md. at 422. But it explained that it was bound by the "plain and unambiguous language" of the statutes despite being sympathetic to its potential impact. *Id.* The same is true in this case.

The Commission is better suited to determine how its current policy on attorney's fees affects the willingness of lawyers to practice in the area of workers' compensation. *Rogers v. Welsh*, 113 Md. App. 142, 155 (1996); *Ingerman*, 353 Md. at 54 (the agency is "uniquely positioned to conduct the delicate balance of protecting claimants and assuring adequate compensation."). Deciding whether changes should be made to how attorney's

---

> Up to 20 percent of the first $50,000 of the *total award of compensation*; (ii) Up to 15 percent of the next $50,000 of the *total award of compensation*; and (iii) Up to 5 percent of the *total award of compensation* in excess of $100,000.

COMAR 14.09.04.03(C)(3)(a) (effective Apr. 3, 2023) (emphasis added). The Commission also adopted an amendment that added a definition for the term "award of compensation" to mean "the amount of indemnity benefits *actually paid or payable* to the claimant *after applying*: (i) Any credit or *offset* required by Labor and Employment Article, § 9-503(c), 9-609, or *9-610*, Annotated Code of Maryland . . ." COMAR 14.09.04.03(B)(2)(a) (effective Apr. 3, 2023) (emphasis added).

The purpose of the amendments was to update the schedule of attorney's fees. Proposed Action on Regulations, 50:1 Md. Reg. 30 (Jan. 13, 2023). The changes did not alter the practice of awarding attorney's fees only from the compensation awarded to the claimant (except in circumstances not applicable here). *See* Final Actions on Regulations, 50:6 Md. Reg. 219 (Mar. 24, 2023) (Attorney General's Certification).

fees are calculated is not the judiciary's role; it is a matter for the legislature or the

Commission to consider. *Rogers*, 113 Md. App. at 155.

> **JUDGMENTS OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY AFFIRMED; COSTS TO BE PAID BY APPELLANTS.**

23